**In re Lewis GOIDEL and Linda Goidel, Debtors.**

**Bonnie ROBERTS, Plaintiff,**

**v.**

**Lewis GOIDEL and Linda Goidel, Defendants.**

**Bankruptcy Nos. 92 B 21730, 92–5458A.**

United States Bankruptcy Court, S.D. New York.

Feb. 17, 1993.

Jacoby & Meyers, White Plains, NY, for plaintiff.

Davis & Steinmetz, Pearl River, NY, for defendants.

### DECISION ON COMPLAINT TO DECLARE THE NON–DISCHARGEABILITY OF DEBT

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

The emotionally tense scenario in this case presents the issue as to whether or not the debtors, parents of a four-year old girl, may overcome 11 U.S.C. § 523(a)(6) and obtain a discharge of a defamation claim brought by the plaintiff, Bonnie Roberts, a bus driver of a preschool bus. Bonnie Roberts claims that she was defamed when the debtors told other parents that she had sexually abused their daughter on the bus. The sex abuse accusation was investigated and did not result in any charges brought against Bonnie Roberts who continues in her employment as a preschool bus driver. Thereafter, Bonnie Roberts sued the debtors for defamation in the New York State Supreme Court, Westchester County. Damages were sought in the sum of $500,000.00. The state court action was stayed when the debtors filed a joint petition for relief under Chapter 7 of the Bankruptcy Code.

### FINDINGS OF FACT

1. On November 1, 1990, the plaintiff, Bonnie Roberts, was employed by the City of Peekskill as a Park Street Pre–Kindergarten bus driver. The children at the Park Street school were all about four years of age. There were approximately thirty to forty children assigned to bus 102, including the debtors' four-year old daughter, Tara Goidel.

2. In addition to the bus driver, Bonnie Roberts, a monitor was also assigned to the bus. The monitor, Michelle D. Spencer, testified that she always remained on the bus until the last child got off. On November 1, 1990, Tara Goidel misbehaved and hit another little girl sitting next to her with a seat belt buckle. Michelle Spencer reprimanded Tara and changed her seat to the front row of the bus near the door. Michelle Spencer testified that other than the seat belt incident, nothing unusual happened on the bus and that Tara was dropped off at her home around 4:00 p.m., which was the usual time for her arrival. There were two remaining children to be dropped off thereafter.

3. Kathleen Cowan testified that her daughter was on the bus on November 1, 1990 and that her daughter was dropped off after Tara, shortly after 4:00 p.m. Kathleen Cowan testified that there was always a monitor on the bus in addition to the bus driver and that her daughter was dropped off on time on November 1, 1990.

4. On November 4, 1990, Kathleen Cowan attended a birthday party for Tara Goidel at the Goidel residence, where she overheard parents saying that Tara had pointed to a doll and that the bus driver had touched her private parts. Mrs. Cowan told those present that her daughter was the last one off the bus and questioned how such an incident could have happened because there was always a monitor on the bus. Mrs. Cowan said that Mrs. Goidel was upset. Mrs. Goidel told her that something happened on the bus and that Tara had used a doll to explain what happened. Mrs. Cowan testified that she had previously heard about the incident from rumors at school and not from Mrs. Goidel.

5. Mrs. Goidel testified that the bus dropped off Tara unusually late on November 1, 1990, at approximately 5:15 p.m.

She said that Tara told her that Bonnie touched her private parts and scratched her with a finger nail. Mrs. Goidel then called her mother, Tara's grandmother, and related the incident to her mother, who called the school and complained to the school social worker and Tara's teacher. Mrs. Goidel said that five days later she followed up her mother's complaint and reported to the school representatives what Tara had told her. Mrs. Goidel testified that she spoke only to school officials, the police and her attorney; she did not repeat her charges to any of the parents of children on Tara's bus.

6. Louis Goidel, Tara's father, testified that his wife told him what Tara had said when he called home on November 1, 1990 at about 5:30 p.m. He is a teacher at the Bedford Correctional Facility and did not want any of the inmates to hear about the incident with Tara. Therefore, he told his wife to have her mother call the school authorities to investigate the facts relating to what Tara had said about the alleged sexual abuse.

7. Bryna Bloom, a certified social worker, testified that Mrs. Goidel called her and asked her to treat Tara, who was very upset. Ms. Bloom testified that Tara's behavior led her to believe that Tara had been subject to some sexual abuse.

8. The plaintiff, Bonnie Roberts, testified that the only incident on the bus that took place on November 1, 1990 was the change of Tara's seat by the monitor, Michelle Spencer, after Tara hit another girl with her seat belt. After an investigation by the school board and the police no further action was taken. She continues in her employ as a pre-kindergarten bus driver for the Park Street school.

9. The evidence was contradictory as to when the bus dropped off Tara on November 1, 1990. The testimony of the plaintiff, Kathleen Cowan and Michelle Spencer supports a normal 4:00 p.m. drop-off time. However, Mrs. Goidel testified that Tara was dropped off late, at 5:15 p.m. Apart from the drop off time, the only other evidence to support a charge of sexual abuse against Bonnie Roberts was the fact that Mrs. Goidel said Tara complained about being touched and scratched on the bus, using a doll to explain the incident.

10. Mrs. Goidel testified that, notwithstanding the testimony of Kathleen Cowan and Michelle Spencer to the effect that the bus dropped the children off around 4:00 p.m. on November 1, 1990, the bus did not drop off Tara until 5:15 p.m. that day. Indeed, Mrs. Goidel testified that she telephoned the school at 5:00 p.m. complaining that the bus was late. Mrs. Goidel did not produce any records from the school to support her testimony that she telephoned at 5:00 p.m. on November 1, 1990, complaining about the delay.

11. Based upon the credible evidence presented in this case and excluding contradictory unsupported testimony, the court concludes that the alleged incident of sexual abuse of which the Goidel's complained to the school authorities has not been established. There was no credible evidence that Bonnie Roberts ever molested Tara Goidel or subjected Tara to any act of sexual abuse at any time.

12. If the incident did not occur at all and if Tara did not voice any complaints to her mother, it would follow that the Goidels would have no cause or excuse for reporting to the school authorities that the plaintiff molested Tara and that such report should be regarded as knowingly false. However, if Tara made up the story, perhaps because she was chastised on the bus for hitting another little girl, the Goidels would have no other basis for determining the falsity of the story at that time, and would be justified in reporting the suspected child abuse incident to the appropriate authorities.

13. The plaintiff's action for defamation, which is an intentional tort, was filed on October 3, 1991 in the New York State Supreme Court, Westchester County and is still pending. If the state court or a jury determines that the debtors are liable to the plaintiff for defamation and in a specified amount, this court will then be able to determine if such liability is nondischargeable as a willful and malicious injury by the debtors within the meaning of 11 U.S.C.

§ 523(a)(6). The state court action was stayed when the debtors filed with this court on September 3, 1992 their voluntary joint petition for relief under Chapter 7 of the Bankruptcy Code.

## DISCUSSION

 Willful and malicious injuries caused by the debtor to others, or to the property of others, are excepted from discharge pursuant to 11 U.S.C. § 523(a)(6). Personal malevolence is not required if the act was willful and done intentionally and voluntarily. *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904). Malice in the bankruptcy sense with respect to defamation is established if the person charged with the statement knew that it was false when made. *Wheeler v. Laudani,* 783 F.2d 610, 615 (6th Cir.1986); *In re Durrance,* 84 B.R. 238, 239 (Bankr. M.D.Fla.1988); *In re Voltolini,* 48 B.R. 199, 201 (Bankr.D.Mass.1985); *In re Pereira,* 44 B.R. 248, 251 (Bankr.D.Mass.1984). Reckless disregard for the truth or falsity of the statement, which can support a verdict for defamation, does not meet the standard for willful and malicious injury within the meaning of 11 U.S.C. § 523(a)(6). *Wheeler,* 783 F.2d at 615; *Voltolini,* 48 B.R. at 201.

The critical issue in the instant case is whether or not the debtors knew that the plaintiff, Bonnie Roberts, did not sexually molest their daughter, Tara, on November 1, 1990. The evidence supports the conclusion that Bonnie Roberts could not have molested Tara on the bus because Michelle Spencer, the monitor, was always present until the last child was dropped off. Moreover, Kathleen Cowan testified that her daughter was dropped off that day after Tara was dropped off, that the bus arrived on time, and that her daughter said nothing about any incident on the bus. Mrs. Goidel's testimony that she called the school at 5:00 p.m. on November 1, 1990 because the bus was late was not supported by any records from the school, although she said that the call was in the school's log of telephone calls. Another peculiar fact was that the original complaint to the school came from Tara's grandmother after Tara's mother relayed the story to the grandmother, rather than a direct telephone call from Tara's mother.

Even if Tara made up the sexual abuse story to get back at the bus driver for having been chastised for hitting another girl with a seat belt, the debtors would have been justified in reporting the incident to the authorities because section 414 of the New York Social Services Law provides that "any person may make such a report [suspected child abuse] if such person has reasonable cause to *suspect* that a child is an abused or maltreated child." N.Y.Soc. Serv.Law § 414 (McKinney 1992) (emphasis added). Mrs. Goidel testified that she did not tell any parent of a child attending Tara's school that Bonnie Roberts had molested her daughter and that she spoke only to the school authorities and the police. Mrs. Cowan testified that she originally learned of the incident from rumors in circulation at the school and not directly from Mrs. Goidel.

To support a nondischargeability claim under 11 U.S.C. § 523(a)(6), Bonnie Roberts will have to convince the state court or a jury that the debtors had no justification for charging her with sexually molesting Tara and that they knew that such accusation was false. Bonnie Roberts's defamation claim for $500,000.00 has not yet been established and has been stayed because the debtors filed a joint petition under Chapter 7 of the Bankruptcy Code. In order to determine if Bonnie Roberts's claim is nondischargeable under 11 U.S.C. § 523(a)(6), it must be established that the debtors owe a debt to her because section 523(a) deals with the nondischargeability of "any debt." In light of the general jurisdictional proscription in 28 U.S.C. § 157(b)(5) that personal injury tort and wrongful death claims shall not be tried in the bankruptcy court, the plaintiff's tort action for defamation should proceed in the state court to judgment, after which a determination of nondischargeability may be had if the plaintiff obtains a judgment in her favor.

The instant case is unlike the facts in *Flores Rivera v. Telemundo Group*, 133 B.R. 674 (D.P.R.1991), where a Chapter 13 debtor was able to maintain a defamation action against the defendants notwithstanding the defendants' motion for abstention pursuant to 28 U.S.C. § 1334(c)(1) & (2). Permissive abstention was denied despite the fact that the case was a non-core proceeding which involved non-bankruptcy issues because the court concluded that the alleged defamation which was the subject of the suit caused the plaintiff to file a Chapter 13 case. Additionally, there was no state court defamation action pending at the time. In the instant case, the defendants, rather than the plaintiff, are debtors in a bankruptcy case and there is a state court defamation case pending which was previously commenced by the plaintiff.

 Accordingly, in the interest of justice and comity with the state court in which Bonnie Roberts's defamation action is pending, this court will exercise its discretion pursuant to 28 U.S.C. § 1334(c)(1) and will abstain from determining the amount of Bonnie Roberts's claim until she is able to obtain, if at all, a money judgment against the Goidels in the state court. *See, e.g., Citibank, N.A. v. White Motor Corp. (In re White Motor Credit)*, 761 F.2d 270 (6th Cir.1985) (affirming bankruptcy court's decision to abstain and permit state court to decide personal injury cases). In furtherance of this procedure, the automatic stay imposed under 11 U.S.C. § 362(a) shall be lifted for cause, as expressed in 11 U.S.C. § 362(d)(1), so that Bonnie Roberts may proceed with her state court defamation action to judgment, but there shall be no execution on any such judgment pending further determination by this court.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties under 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(I).

2. The plaintiff's pending tort action for defamation should proceed against the debtors in the New York State Supreme Court, Westchester County, until judgment. This court will exercise its discretion and will abstain pursuant to 28 U.S.C. § 1334(c)(1) from determining the amount of the plaintiff's defamation claim against the debtors and will permit the state court to determine liability, if any, and the amount thereof. For this purpose the automatic stay shall be lifted for cause pursuant to 11 U.S.C. § 362(d)(1) up to, and including the entry of a judgment.

3. In the event that the plaintiff obtains a money judgment for defamation against the debtors in the state court action, this court will then determine if such judgment is nondischargeable under 11 U.S.C. § 523(a)(6).

SETTLE ORDER ON NOTICE in accordance with the foregoing.