In re Robert E. WIEN, Debtor.

KATAHN ASSOCIATES, INC., Plaintiff,

v.

Robert E. WIEN, Defendant.

Bankruptcy No. 92 B 19154.
Adv. No. 92 A 01580.

United States Bankruptcy Court,
N.D. Illinois, E.D.

June 8, 1993.

Paul F. Donahue, Ethan E. Trull, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Katahn Associates, Inc., plaintiff.

Richard M. Bendix, Jr., John P. Rompon, Schwartz, Cooper, Kolb & Gaynor, Chicago, IL, for Robert E. Wien, debtor-defendant.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the motion of Katahn Associates, Inc. ("Katahn") for summary judgment pursuant to Federal Rule of Civil Procedure 56, incorporated by reference in Federal Rule of Bankruptcy Procedure 7056, on its complaint to determine the dischargeability of a certain debt owed it by the debtor/defendant Robert Wien ("Wien"). Katahn's claim is based upon a debt which arose from a judgment entered by the United States District Court for the Northern District of Illinois, alleged here to be non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6). For the reasons set forth herein, the Court having considered the pleadings, transcripts, findings, and orders from the district court proceeding, grants the motion for summary judgment.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

### II. FACTS AND BACKGROUND

The district court judgment arose from litigation over a business relationship between the parties whereby corporations owned by Wien agreed to promote Katahn's products. Katahn's complaint against Wien asserted that Wien violated RICO (Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(a), (b) and (c)), improperly converted funds to his own use, and that Wien was personally liable for the debts of his corporations under an alter ego theory. Katahn's motion for summary judgment against Wien was granted by the district court on October 9,

1991. Wien appealed, but on June 8, 1992, the Seventh Circuit Court of Appeals upheld the district court's entry of summary judgment.

The facts and findings underlying the district court's entry of summary judgment in favor of Katahn are fully set forth in Judge Holderman's thirty-two page Statement of Reasons Pursuant to Rule 50 for Granting Katahn's Motion for Summary Judgment, entered March 12, 1992. The Statement of Reasons is replete with specific factual findings and legal conclusions made from identified portions of the pleadings and depositions made a part of the district court record in that case. These facts are briefly summarized as follows: Katahn is a corporation which owns and promotes health, fitness, and diet programs created by Dr. Martin Katahn. The diet programs owned by Katahn include the Rotation Diet and the Rotation Diet Plus. Wien operated two corporations known as Wienco and Bob Wien, Inc. ("B.W.I."). Scene Three, Inc. was a company that produced film, television, and videotape promotions.

In 1986 and 1987, Katahn, Scene Three, and Wienco entered into contracts for the promotion of the diet programs in grocery stores in the United States and abroad. Pursuant to the terms of the contracts, Katahn was to bear no expenses of the promotional campaign. Katahn was to receive a percentage of the gross proceeds, and the participating grocery stores were to send payment for the diet programs to a lockbox at a Nashville, Tennessee bank. The contents of the lockbox were to be dispersed to Katahn, Scene Three, and Wienco in accordance with the terms of the contracts. The parties also entered into a contract for the foreign licensing of the Rotation Diet. The contract provided for the wire transfer of all payments for the sales abroad to a special escrow account. The expenses of promoting the diet programs exceeded the parties' expectations. Wienco bore the increased expenses, as provided in the contract. Frustrated by his decreasing share of the profits, Wien began his scheme of diverting funds which should have been remitted to the lockbox and the escrow account.

Wien's scheme began when he told Lester Podolsky, an employee of Wienco, to instruct the grocery stores participating in the diet programs to send their checks directly to Wienco, rather than to the lockbox. Wien also told Podolsky to change the language in the contracts with the grocery stores so that all payments from the stores were sent directly to Wienco. Originally, the address for the lockbox was typed on the Wienco invoices. In furtherance of his scheme to divert funds, Wien instructed Doreen Hinkes, another Wienco employee, to stop including the lockbox address on the invoices. Wien also instructed Hinkes and foreign licensees to deposit proceeds from the diet programs directly into a B.W.I. account. Hinkes was further instructed to use the proceeds from the diet programs to pay various Wienco bills which were not associated with promoting the programs. Wien was fully aware that funds exceeding $894,335.32 went directly to Wienco, rather than to the lockbox in Nashville. The amount owed to Katahn and Scene Three, diverted by Wien totals $241,079.00. To date, Katahn has received $43,332.00, leaving $197,747.00 still owing.

Katahn moved for summary judgment on its complaint, and filed the requisite Local Rule 12(M) statement of undisputed facts. Wien failed to respond to Katahn's Rule 12(M) statement, despite being granted numerous continuances and opportunities to do so. Judge Holderman ruled that because of the Wien parties' failure to respond to the Rule 12(M) statement, all of the matters contained therein were deemed admitted. Judge Holderman granted summary judgment based upon the facts contained in Katahn's Rule 12(M) statement and its motion for summary judgment. He made findings and conclusions that Wien had committed fraud and conversion. The judgment for actual damages of $233,935.00 was trebled under RICO to $701,805.00. Wien then appealed the district court's judgment to the Seventh Circuit Court of Appeals. The Seventh Circuit affirmed the district court's judgment.

*Wienco, Inc. v. Katahn Assoc., Inc.,* 965 F.2d 565 (7th Cir.1992).

Subsequently, Wien filed bankruptcy. On December 1, 1992, Katahn filed the instant adversary proceeding, seeking to have its judgment debt excepted from discharge pursuant to Sections 523(a)(2)(A) and 523(a)(6) of the Bankruptcy Code. Katahn asserts that the judgment of the district court, in the amount of $701,805.00 is non-dischargeable under sections 523(a)(2)(A) and 523(a)(6). The instant motion seeks to collaterally estop Wien from re-litigating the above facts giving rise to the district court judgment. Wien argues Judge Holderman's findings of fact in the earlier district court proceedings should not be given collateral estoppel effect and opposes the present motion for summary judgment. Wien concludes that because Katahn's motion for summary judgment was unopposed, the district court's disposition of the case is more like a default judgment than a summary judgment. Thus, collateral estoppel should not apply. Wien also argues that to the extent the Court finds that Katahn's claim is non-dischargeable, the claim should be equitably reduced because of Katahn's post-petition conduct with regard to the sale of one of Wien's assets.

## III. *APPLICABLE STANDARDS*

### A. *Summary Judgment Standard*

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

> [T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Donald v. Polk County,* 836 F.2d 376, 378–379 (7th Cir. 1988). In 1986, the United States Supreme Court decided a trilogy of cases which en-

courage the use of summary judgment as a means to dispose of factually unsupported claims. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute." *Farries v. Stanadyne/Chicago Div.,* 832 F.2d 374, 378 (7th Cir.1987) (*quoting Wainwright Bank & Trust Co. v. Railroadmens Federal Sav. & Loan Asso.,* 806 F.2d 146, 149 (7th Cir.1986)). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552; *Matsushita,* 475 U.S. at 585–586, 106 S.Ct. at 1355–1356. There is no genuine issue for trial if the record, taken as a whole, does not lead a rational trier of fact to find for the non-moving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–250, 106 S.Ct. at 2510–2511 (citations omitted); *see also Valley Liquors Inc. v. Renfield Importers. Ltd.,* 822 F.2d 656, 659 (7th Cir.1987), *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings, rather its response must show that there is a genuine issue for trial. *Anderson,* 477

U.S. at 248, 106 S.Ct. at 2510; *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *Patrick v. Jasper County,* 901 F.2d 561, 564–566 (7th Cir.1990). The manner in which this showing can be made depends upon which party will bear the burden of persuasion at trial. If the burden of persuasion at trial would be on the non-moving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either submitting affirmative evidence that negates an essential element of the non-moving party's claim, or by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. *See* 10A Charles Wright, Arthur Miller, Mary Kay Kane, *Federal Practice and Procedure* § 2727, pp. 130–131 (1983).

Moreover, all reasonable inferences to be drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Karazanos v. Navistar International Transportation Corp.,* 948 F.2d 332, 335 (7th Cir.1991) (citations omitted); *Davis v. Chicago,* 841 F.2d 186, 189 (7th Cir.1988) (citations omitted); *Marine Bank, Nat. Assoc. v. Meat Counter, Inc.,* 826 F.2d 1577, 1579 (7th Cir.1987); *De Valk Lincoln Mercury Inc. v. Ford Motor Co.,* 811 F.2d 326, 329 (7th Cir.1987); *Bartman v. Allis Chalmers Corp.,* 799 F.2d 311, 312 (7th Cir.1986), *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987); *In re Calisoff,* 92 B.R. 346, 350–351 (Bankr.N.D.Ill.1988). Furthermore, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under the applicable law. *Donald v. Polk County,* 836 F.2d at 379; *Wallace v. Greer,* 821 F.2d 1274, 1276 (7th Cir.1987); *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.1983) (en banc), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). "Summary judgment is not an appropriate occasion for weighing the evidence; rather the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990).

Rule 12(M) of the General Rules of the United States District Court for the Northern District of Illinois, adopted by the General Order of the Bankruptcy Court on May 6, 1986, requires that the party moving for summary judgment file a detailed statement of material facts as to which it contends there is no genuine issue. The statement must include specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the summary judgment relief sought. Rule 12(N) also requires that the party opposing the motion file a statement of material facts as to which there is a genuine issue. If the opposing party's Rule 12(N) statement fails to deny the facts set forth in the movant's statement, those facts will be deemed admitted. In the present proceeding, Katahn filed its requisite Rule 12(M) statement and Wien filed his Rule 12(N) statement which did not disagree with any of Katahn's Rule 12(M) statement, but concluded only that Judge Holderman's Statement of Reasons do not constitute findings of fact.

**B. *The Doctrine of Collateral Estoppel***

The same operative facts which give rise to the district court's summary judgment are the bases of the instant adversary proceeding. If properly applicable, the doctrine of collateral estoppel urged by Katahn precludes Wien from re-litigating those facts which were necessarily decided by the district court. Before determining whether the prior district court judgment will be given collateral estoppel effect in the present action, it is important to discuss how the doctrines of collateral estoppel (or issue preclusion) and res judicata (or claim preclusion) apply when a bankruptcy court reviews a complaint to determine the dischargeability of a debt. Under the doctrine of res judicata a final judgment on the merits of an action precludes the parties and their privies from re-litigating issues that were or could have been raised in that action. *Bicknell v. Stanley,* 118 B.R. 652, 657 (S.D.Ind.1990), *(citing Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980)). The Supreme Court has decided that the doctrine of res judicata is inapplicable to cases determining the dischargeability of a debt in bank-

ruptcy, because jurisdiction to determine the dischargeability of a debt is left to the bankruptcy court. *Brown v. Felsen*, 442 U.S. 127, 134–138, 99 S.Ct. 2205, 2211–2213, 60 L.Ed.2d 767 (1979). The Supreme Court, however, has left open the issue of whether the doctrine of collateral estoppel may be applied in dischargeability proceedings. *Id.* at 139, n. 10, 99 S.Ct. at 2213 n. 10. In the Seventh Circuit, collateral estoppel can apply to cases in which a court hearing a nonbankruptcy case has determined factual issues relevant to a subsequent non-dischargeability claim, provided that the non-bankruptcy court used the same standards that a bankruptcy court would have used in determining the issues which are subsequently given collateral estoppel effect. *Klingman v. Levinson*, 831 F.2d 1292, 1294 (7th Cir.1987) (citations omitted); *see e.g., In re McGuffey*, 145 B.R. 582, 587 (Bankr.N.D.Ill.1992).

■ Under the doctrine of collateral estoppel, once a court has decided an issue necessary to its judgment, that decision may preclude re-litigation of the same issue in a suit on a different cause of action involving a party to the first case. Although Congress has vested jurisdiction to determine the dischargeability of debt in the bankruptcy court, it does not mean that every last fact issue bearing on dischargeability must be re-litigated, re-tried, and again decided when there has been a prior determination of the same facts by a court of competent jurisdiction. *Snydergeneral Corp. v. Gibson*, 149 B.R. 562, 572 n. 5 (Bankr.D.Minn.1993); *In re Powell*, 95 B.R. 236, 238 (Bankr.S.D.Fla.1989), *aff'd*, 108 B.R. 343 (S.D.Fla.1989), *aff'd*, 914 F.2d 268 (11th Cir.1990); *In re Coover*, 70 B.R. 554, 558, (Bankr.S.D.Fla.1987). Courts apply the doctrine of collateral estoppel to promote judicial economy by encouraging parties to present their best arguments. *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.1981). Prospective debtors who ignore pre-bankruptcy proceedings for liquidation of debts, which may be excepted from discharge, do so at great risk to their options for the defense of dischargeability proceedings. *Id.* Because the previous judgment in the present case is a federal court judg-

ment, federal standards, rather than state law standards for collateral estoppel, determine whether giving collateral estoppel effect to the district court proceedings is appropriate. *In re Nix*, 92 B.R. 164, 167 (Bankr.N.D.Tex.1988) (citations omitted); *Powell*, 95 B.R. at 238. The Seventh Circuit has held that in order for collateral estoppel to be applied in a proceeding to determine the dischargeability of a debt, the following criteria must be met: (1) the issue which is sought to be precluded from relitigation must be the same as the issue involved in the prior proceeding; (2) the issue sought to be precluded must have been actually litigated in the prior proceeding; (3) determination of the issue must have been essential to the final judgment in the earlier proceeding; and (4) the party against whom estoppel is asserted must have been fully represented in the prior proceeding. *Levinson*, 831 F.2d at 1295 (citations omitted).

In the present case, the first requirement is met. The factual issues which were necessary to the district court's entry of summary judgment are the same as the factual issues that will determine whether Wien's debt is dischargeable. The same events and series of transactions which gave rise to Katahn's complaint in the district court supply the factual basis for Katahn's claim that Wien's debt is non-dischargeable. The particular facts found by the district court which provide the basis for holding Wien's debt non-dischargeable are discussed below.

The second requirement for application of collateral estoppel is that the matter was actually decided or litigated in the earlier proceeding. In his principal defense, Wien asserts that the factual issues decided by the district court were not actually litigated. Wien concludes that because he was not allowed to file a Rule 12(N) statement, and because Judge Holderman's Statement of Reasons for granting Katahn's motion for summary judgment was based solely upon Katahn's Rule 12(M) statement, the decision of the district court is more like a default judgment than a summary judgment. Thus, states Wien, the matters de-

cided by the district court were not actually litigated. Both the cases and the commentators differ as to when a default judgment satisfies the "actually litigated" requirement of collateral estoppel.

There is some support for Wien's contention that an uncontested summary judgment, under some circumstances, should receive the same collateral estoppel effect as a default judgment. In *In re Dvorak*, 118 B.R. 619, 626 (Bankr.N.D.Ill.1990), the court held that a summary judgment, granted upon facts which were deemed admitted following the non-movant's failure to oppose the motion should be given the same collateral estoppel effect as a default judgment. *Dvorak* held that entry of summary judgment satisfies the actually litigated requirement for collateral estoppel only if the party against whom the judgment was entered had proper incentive to, and did in fact, fully contest the motion on its merits. *Id.* at 626 (citations omitted). In *Dvorak*, contrary to the facts of this case, the debtor claimed he had not received the state court motion for summary judgment. The *Dvorak* court noted that a contrary conclusion would be reached if the debtor had actively opposed the motion. *Id.*

The *Dvorak* approach follows a line of cases strictly construing the actually litigated requirement. This line of cases which reads the actually litigated requirement narrowly, denying collateral estoppel effect to default judgments, consent judgments, and uncontested summary judgments in all but a few cases. 1B James W. Moore *Moore's Federal Practice* ¶ 10.444 (2d ed.1992); see *Grip–Pak, Inc. v. Illinois Tool Works Inc.*, 694 F.2d 466, 469 (7th Cir.1982), *cert. denied*, 461 U.S. 958, 103 S.Ct. 2430, 77 L.Ed.2d 1317 (1983); *In re McMillan*, 579 F.2d 289, 293 (3d Cir.1978); *In re Stiles*, 118 B.R. 81, 85–86 (Bankr. W.D.Tenn.1990). Such narrow reading of the actually litigated requirement contends that it is unfair to give default or summary judgments collateral estoppel effect when the party may not have had proper incentive to fully litigate the earlier case (e.g., the dispute was over a very small amount), or when the party could not foresee that

the earlier proceeding may be given collateral estoppel effect in subsequent litigation. *In re Rudd*, 104 B.R. 8, 20–21 (Bankr.N.D.Ind.1987).

Another line of cases, however, reads the actually litigated requirement in a less narrow manner and provides that the collateral estoppel effect of a judgment must be decided on a case by case basis. This line of cases seeks to alleviate the harshness of refusing to give collateral estoppel effect to all default judgments by suggesting that the Court consider the following factors when applying the doctrine of collateral estoppel: the extent to which a party has relied on an earlier judgment, the parties' and the court's interest in repose, the incentive the losing party had to fully litigate the earlier matter, whether the party had a fair opportunity to litigate the matter (i.e. had due notice and an opportunity to be heard), and finally whether the application of collateral estoppel to subsequent proceedings was reasonably foreseeable. One authority notes:

> Defense preclusion upon default, in short, requires a painstaking effort to assess the extent of the reliance and repose that should be protected after a particular first proceeding. For the time being, at least, sound answers must be based upon common sense more than any satisfactory theory. When a better theory emerges, it will be a general theory of defense preclusion that embraces the fact and nature of default as one factor in a broader equation.

18 Charles A. Wright, Arthur Miller, Edward H. Cooper, *Federal Practice and Procedure* § 4442 (1981). Under the less narrow reading of the actually litigated requirement, a matter can be actually litigated for purposes of collateral estoppel when the issue had been raised by the pleadings, submitted to a jury or finder of fact, and the matter is determined after the party has notice and an opportunity to be heard. An adversarial hearing is not required in every case.

Thus, a default judgement entered by a court with sufficient findings of fact can be given collateral estoppel effect in a pro-

ceeding to determine the dischargeability of a debt. *In re Herwig,* 77 B.R. 662, 664 (Bankr.S.D.Ill.1987). In *Herwig,* the debtor had filed an answer and a counterclaim, yet failed to take any further action to defend the claim. *Id.* The state court heard the plaintiffs' evidence, found the debtor in default, and entered judgment in favor of the plaintiffs. *Id.* The bankruptcy court, in a subsequent proceeding, held that the state court default judgment satisfied the actually litigated requirement. The court distinguished the case from the typical default judgment case in which the defendant failed to answer or appear. *Id.*

A bankruptcy court usually reviews the entire record of an earlier proceeding when deciding whether a matter has been actually litigated for the purposes of collateral estoppel. *In re McGuffey,* 145 B.R. 582, 587 (Bankr.N.D.Ill.1992); *Sylvester v. Martin,* 130 B.R. 930, 943 (Bankr.N.D.Ill.1991). However, it is not necessary for the Court to review the entire record from the district court to determine whether the matters at issue in the present dischargeability action were actually litigated in the district court. *See e.g., In re Wellever,* 103 B.R. 856, 859 (Bankr.W.D.Mich.1989). The Court has been provided with a sufficient portion of the record from the earlier proceeding. Moreover, in light of Wien's failure to defend the district court action, review of every hearing transcript would not provide additional insight into Wien's position. Wien has had an adequate opportunity to supplement the record to assist with the Court's review in the present case, and Wien has had adequate opportunity to refute the matters contained in the record before this Court.

■ This Court does not follow the line of cases which give a narrow reading to the · actually litigated requirement for application of the doctrine. Under the undisputed facts provided by this case, it would be an abuse of the doctrine of collateral estoppel to allow Wien to re-litigate here the factual issues decided by the district court. The bankruptcy court does not act as an effective appellate court with jurisdiction to review the district court's earlier judgment.

If a debtor is not satisfied and does not wish to be bound by the district court's action, the remedy is appeal to the Court of Appeals, which is exactly what Wien did and lost. *See e.g., In re Scarfone,* 132 B.R. 470, 472 (Bankr.M.D.Fla.1991). Wien had notice of the district court hearing on Katahn's motion for summary judgment and made an appearance. He was represented by counsel at the hearing on the motion for summary judgment and thereafter in post-judgment proceedings. There is no question that Wien had an adequate opportunity to be heard in the district court proceeding. Wien appealed the district court proceeding and is now bound by such result. The summary judgment entered was not the functional equivalent of a default judgment entered against an unrepresented defendant who never appeared.

In light of the sizeable damages demand made by Katahn, and the threat of treble damages under RICO, Wien had a sufficient financial incentive to fully litigate the district court proceeding. Moreover, Wien, represented by able counsel, could have reasonably foreseen subsequent proceedings to which the doctrine of collateral estoppel would apply. "[D]efault judgments provide the sanction that compels defendants to play the game and abide by the rules. Claim and defense preclusion are necessary to make the sanction effective." 18 Charles Wright, Arthur Miller, Edward H. Cooper, *Federal Practice and Procedure* § 4442 (1981). Thus, the Court finds that the matters decided by Judge Holderman were actually litigated for the purpose of collateral estoppel. The Court also rejects the specious, disingenuous argument that Judge Holderman's Statement of Reasons do not constitute his findings and conclusions. A trial court's findings of fact and legal conclusions are precisely its reasons upon which the case is decided. To not apply the doctrine of collateral estoppel would reward Wien for the dilatory and evasive conduct specifically found by the district court and result in unnecessary re-litigation. One effective bite at the litigation apple is enough.

For collateral estoppel to apply, the third requirement that the determination of is-

sues must have been essential to th earlier proceeding must also be met. *Levinson*, 831 F.2d at 1295. In the present case, the factual issues which were decided and necessary for the district court to find that Wien had wrongfully converted money, and that Wien violated RICO are the same predicate facts which are necessary to support a finding by this Court that Wien committed fraud and engaged in willful and malicious conduct.

The final requirement for collateral estoppel has also been clearly met. Wien's attorney not only appeared but also filed an answer in the district court. Therefore, the requirements of *Levinson* are satisfied, and collateral estoppel effect will be given to the district court's entry of summary judgment. To deny the application of the doctrine of collateral estoppel on these facts would in effect reward Wien, a dilatory defendant represented by counsel, for not defending in the prior suit at the expense of both Katahn who received a judgment based upon specific facts and conclusions from the district court, and at the expense of this Court and its judicial resources.

### C. Standard for Dischargeability in the Seventh Circuit

The party seeking to establish an exception to the discharge of a debt bears the burden of proof. *In re Martin*, 698 F.2d 883, 887 (7th Cir.1983). To further the policy of providing a debtor a fresh start in bankruptcy, "exceptions to discharge are to be construed strictly against a creditor and liberally in favor of the debtor." *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir.1985). The United States Supreme Court has held that the burden of proof required for establishing an exception to discharge is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 285, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

### IV. DISCUSSION

### A. Dischargeability of Debts Arising from Fraudulent Conduct

Section 523(a)(2)(A) provides in relevant part:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> > (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A).

■ In order to except Wien's fraud from dischargeability under section 523(a)(2), Katahn must establish the following four elements: (1) Wien obtained money through representations which Wien either knew to be false or made with such reckless disregard for the truth as to constitute willful misrepresentation; (2) Wien possessed scienter, i.e. an intent to deceive; (3) Katahn actually relied on the misrepresentations resulting in loss; and (4) Katahn's reliance was reasonable. *See In re Kimzey*, 761 F.2d 421, 423–424 (7th Cir. 1985) (citations omitted); *Dornik v. Maurice*, 138 B.R. 890, 895 (Bankr.N.D.Ill.1992); *In re Tapper*, 123 B.R. 594, 600 (Bankr. N.D.Ill.1991).

■ In the present case, Wien clearly obtained money through misrepresentations which he knew were false. Wien misrepresented to Scene Three and Katahn that all proceeds from the diet programs would be paid into the lockbox and the escrow account at the Nashville bank. Wien then instructed the Wienco employees to alter the contracts with grocery stores to misappropriate the funds and convert them to his own personal use. Wien knowingly made all of the above misrepresentations.

It is also clear that Wien possessed the requisite intent to defraud Katahn and Scene Three when he made the misrepresentations and devised his scheme to misappropriate the proceeds of the diet programs. The Seventh Circuit has held that an intent to deceive may logically be inferred from a false representation which the debtor knows or should know will induce another to advance money to the debtor. *Kimzey*, 761 F.2d at 424; *Federal*

*Trade Commission v. Austin,* 138 B.R. 898, 914 (Bankr.N.D.Ill.1992). The finding of fact as to the fraudulent intent of the debtor will [often] have to be established by circumstantial evidence in most cases as direct evidence of the defendant's state of mind at the time is seldom expressly indicated. *In re Guy,* 101 B.R. 961, 978 (Bankr.N.D.Ind.1988) *(quoting In re Fenninger,* 49 B.R. 307, 310 (Bankr.E.D.Pa. 1985)); *In re Taylor,* 49 B.R. 849, 851 (Bankr.E.D.Pa.1985) (citations omitted). In the present case, Wien's fraudulent intent can be logically inferred from his continuing course of conduct whereby he misappropriated funds and directed Wienco employees to help further his scheme.

The third requirement for finding an exception to discharge under section 523(a)(2)(A) is that the creditor actually relied on the debtor's misrepresentations. *Kimzey,* 761 F.2d at 423 (citations omitted). The Seventh Circuit has held that actual reliance may be proven by circumstantial evidence of reliance. *In re Kreps,* 700 F.2d 372, 376 (7th Cir.1983). In the present case, the circumstantial evidence proves that Katahn and Scene Three relied on Wien's representations that the proceeds from the diet program sales would be split in accordance with their contracts.

 Finally, the creditor must show that it was damaged by the debtor's misrepresentation. *Kimzey,* 761 F.2d at 424. In the present case, the district court found that Wien improperly directed proceeds from the diet programs in the amount of $894,555.32, into his own accounts. Out of that amount, $241,079.00 should have been given to Katahn and Scene Three. To date, $197,747.00 is still outstanding. Therefore, Katahn has shown that it was damaged by Wien's conduct. The portion of the debt actually attributable to Wien's fraudulent conduct is nondischargeable pursuant to section 523(a)(2)(A). However, the vast majority of cases have held that punitive damages, such as the treble damages allowed by RICO, and other jury or statutorily allowed punitive damage awards are not excepted from discharge under the plain language of section 523(a)(2)(A). *Cf. St.*

*Laurent v. Ambrose,* 991 F.2d 672 (11th Cir.1993) (court held award of punitive damages flowing from the same course of conduct that necessitated an award of compensatory damages was dischargeable under section 523(a)(2)(A)). Rather, if such damages are allowed to be excepted from discharge, the creditor must satisfy the requirements of section 523(a)(6) and show that the damages arose from the debtor's willful and malicious conduct.

**B. Debts Arising from Willful and Malicious Conduct**

Section 523(a)(6) provides as follows:

(a) A discharge under section 727, 1141, 1228[a], 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury caused by the debtor to another entity or to the property of another entity....

11 U.S.C. § 523(a)(6).

There is currently a split of authority including the bankruptcy judges within this circuit as to whether punitive damage awards may be excepted from discharge under section 523(a)(6). *See In re Dvorak,* 118 B.R. 619 (Bankr.N.D.Ill.1990) (case thoroughly discusses the split of authority). One line of cases holds that excepting punitive damages from discharge is contrary to the express goal of providing the debtor a fresh start in bankruptcy, and it over-compensates the creditor for his injury. *See, e.g., In re Alwan Bros. Co.,* 105 B.R. 886, 890 (Bankr.C.D.Ill.1989); *In re Schmidt,* 36 B.R. 834, 836–837 (Bankr.D.Minn.1984). Some of these cases note that excepting punitive damages from discharge under section 523(a)(6) for creditors other than governmental entities is contrary to Congressional intent. *Matter of Suter,* 59 B.R. 944, 947 (Bankr.N.D.Ill.1986); *Alwan Bros.,* 105 B.R. at 891. The rationale is that in section 523(a)(7), Congress created a specific exception to the discharge of non-compensatory damages only for governmental entities. *Matter of Suter,* 59 B.R. 944, 947 (Bankr.N.D.Ill.1986). If Congress had intended to except other noncompensa-

tory damages from discharge for individuals, it would have done so.

The other line of cases allows punitive damage awards to be excepted from discharge. In bankruptcy there are goals which the court seeks to further, such as protecting certain classes of creditors; among such creditors are those whom the debtor has harmed by egregious conduct. *In re Britton,* 950 F.2d 602, 606 (9th Cir. 1991). Many cases have held that punitive damage awards for willful and malicious conduct are excepted from discharge under section 523(a)(6). *McGuffey,* 145 B.R. 582; *Dvorak,* 118 B.R. 619; *In re Miera,* 926 F.2d 741 (8th Cir.1991); *In re Adams,* 761 F.2d 1422 (9th Cir.1985) (all liabilities arising from willful and malicious conduct are excepted from discharge); *Stokes v. Ferris,* 150 B.R. 388 (W.D.Tex.1992). Treble damages awarded under RICO are considered to be punitive in nature. *Moravian Dev. Corp. v. Dow Chemical Co.,* 651 F.Supp. 144, 149–150 (E.D.Penn.1986) (a review of the legislative history of RICO indicates that Congress intended for damages assessed under RICO to be punitive in nature); *Gentry v. Resolution Trust Company,* 937 F.2d 899, 910 (3d Cir.1991) ("there is convincing authority that Congress authorized civil RICO's powerful treble damages provision to serve a punitive purpose"). Therefore, statutorily calculated punitive damage awards, including RICO treble damages may be held nondischargeable under section 523(a)(6). *In re Nix,* 92 B.R. 164 (Bankr.N.D.Tex.1988) (treble damages under RICO were nondischargeable under section 523(a)(6)).

While the "fresh start" is "a central purpose of the [Bankruptcy] Code," this opportunity is limited to the "honest but unfortunate debtor." *Grogan v. Garner,* 498 U.S. 279, 285, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (*quoting Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). This line of cases emphasizes that it is the nature of the debtor's conduct and not the nature of the liability which determines whether a debt is excepted from discharge pursuant to section 523(a)(6). *Stokes v. Ferris,* 150 B.R. at 393; *see also Miera,* 926 F.2d at 745;

*McGuffey,* 145 B.R. at 594. This line of cases provides that:

> The very purpose of Section 523(a)(6) is in fact to penalize the debtor for his misdeeds where he has acted willfully and maliciously against another entity, and thus the allowance of punitive damages is not inconsistent with the purpose of the Code in such an instance.

*Dvorak,* 118 B.R. at 631 (citations omitted).

█ This Court holds that a debtor who has engaged in a continuing course of willful and malicious intentional conduct is not entitled to discharge statutorily calculated treble damages by use of the fresh start provided by the Bankruptcy Code. Under the facts of the present case it cannot be argued that Wien was either an honest or unfortunate debtor. The treble damage provision of RICO is intended to deter egregious conduct, such as the conduct engaged in by Wien. Katahn was able to meet the burden of proving that Wien engaged in willful and malicious conduct, and this Court will not undermine the effect of RICO by allowing the discharge of the district court's award of treble damages.

In order for a debt to be held non-dischargeable under section 523(a)(6), "the creditor has the burden of proving that the injury resulted from an act that was both willful and malicious." *Dornik v. Maurice,* 138 B.R. 890, 896 (Bankr.N.D.Ill.1992) (*quoting Kimzey,* 761 F.2d at 424); *United Bank of Southgate v. Nelson,* 35 B.R. 766, 768 (N.D.Ill.1983); *Taradash v. Pokorny,* 143 B.R. 179, 182 (Bankr.N.D.Ill.1992). "Willful" conduct is defined under section 523(a)(6) as "deliberate or intentional...." *In re Iaquinta,* 98 B.R. 919, 924 (Bankr. N.D.Ill.1989) (*quoting In re Condict,* 71 B.R. 485, 487 (N.D.Ill.1987)). To establish that the debtor acted willfully, it is sufficient to show that the debtor intended the acts which gave rise to the creditor's injury. It is not necessary that the debtor act with ill will or malevolent purpose toward the injured party. *Iaquinta,* 98 B.R. at 924, (*quoting In re Hallahan,* 78 B.R. 547, 550 (Bankr.C.D.Ill.1987)), *aff'd,* 113 B.R. 975 (C.D.Ill.1990), *aff'd,* 936 F.2d 1496 (7th Cir.1991). To establish that the debtor act-

ed maliciously when the issue of malice has not been litigated between the parties in the [previous] proceedings the bankruptcy court may make the determination based on the findings from the earlier proceeding. *Williams v. Colonial Discount Co.*, 207 F.Supp. 362 (N.D.Ga.1962); *In re Martinez*, 110 B.R. 353, 355 (Bankr.N.D.Ill. 1990).

The Seventh Circuit has stated that to except a debt from discharge under section 523(a)(6), the creditor must show that the debtor knew his acts would automatically or necessarily cause the creditor's injury. *In re Scarlata*, 979 F.2d 521, 526 (7th Cir.1992). Where the district court has made such detailed and specific findings that the debtor wrongfully converted funds, the bankruptcy court can reasonably infer and find that the debtor knew his conduct would injure the creditor, and as such was both willful and malicious. *Dornik v. Maurice*, 138 B.R. at 896; *In re Guy*, 101 B.R. 961 (Bankr.N.D.Ind.1988) (debt held nondischargeable when the district court found that the debtor converted partnership funds to his own use, and directed that money belonging to the partnership be paid into funds in which the other partners held no interest). Moreover, *Kimzey* stated that section 523(a)(6) protects injured parties who have hazarded the rules of litigation and obtained a verdict, only to have the debtor declare bankruptcy. 761 F.2d at 425. In the present case, the findings of the district court clearly show that the debtor converted to his own personal use, funds properly owed to Katahn and Scene Three. The Court can reasonably infer and find upon such a showing that Wien knew that his creditors would be injured by his misappropriation and conversion. *Dornik v. Maurice*, 138 B.R. at 896. Business persons are presumed to know that harm will result from conversion of a party's property, and a debtor who engages in such a conversion is held personally liable. *In re Nicoll*, 42 B.R. 87, 90 (Bankr.N.D.Ill.1984). Further, the district court found that Wien engaged in a continuing course of conduct, not an isolated incident, in which he falsely represented that the funds would be sent to a lockbox and an escrow account for the benefit of all

of the parties. Therefore, Katahn has succeeded in showing that Wien engaged in willful and malicious conduct giving rise to a debt which is excepted from discharge under section 523(a)(6).

### C. *Affirmative Defense of Equitable Disallowance of Katahn's Claim*

■ In his other defense, Wien alleges that any claims which are held non-dischargeable should be equitably reduced because Katahn acted improperly post-petition in connection with a state foreclosure action after the automatic stay had been lifted for cause under 11 U.S.C. § 362(d)(1) (See Wien's Objection to Motion for Summary Judgment). Wien's allegations are not a defense to his wrongful pre-petition fraud and conversion. The purpose of this adversary proceeding is to determine the dischargeability of the debt arising from Wien's pre-petition conduct. Wien's complaints regarding Katahn's post-petition conduct incidental to the foreclosure proceeding held after the stay was lifted should have been, and according to Katahn were in fact, brought in state court for proper resolution. Katahn stated in its Reply Memorandum in Support of Summary Judgment that Wien's brother objected to the foreclosure sale, that the circuit court reviewed the sale, and overruled Wien's brother's objections.

Whether Wien had proper notice of the foreclosure pursuant to 735 ILCS 5/15–1503, and proper notice of the sale pursuant to 735 ILCS 5/15–1507(c) is a matter of state law. Section 15–1508 provides a mechanism for a mortgagee to object to a foreclosure sale. Furthermore, 735 ILCS 5/15–1508(d) provides that:

> (d) Validity of Sale.... no sale under this Article shall be held invalid or set aside because of any defect in the notice thereof or in the publication of the same, or in the proceedings of the officer conducting the sale, except upon good cause shown in a hearing pursuant to subsection (b) of Section 15–1508.

735 ILCS 5/15–1508(d).

Therefore, the confirmation of the sale pursuant to section 1508 conclusively determined the validity of the foreclosure sale. Therefore, the doctrine of res judicata pre-

cludes this Court from re-examining the propriety of the foreclosure sale. Res judicata prevents parties from relitigating issues that were or could have been raised in an earlier proceeding amongst the same parties, or their privies, regarding the same claim. *Bicknell v. Stanley*, 118 B.R. 652 (S.D.Ind.1990) (*citing Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980)). Any objections Wien had to the sheriff's sale could and should have been properly presented to the circuit court when it confirmed the sale. Therefore, the doctrine of res judicata precludes the re-litigation of Wien's objections to the foreclosure sale.

### V. CONCLUSION

For the reasons set forth herein, the Court grants Katahn's motion for summary judgment. The underlying debt owed by the Debtor, Robert E. Wien, resulting in the subject claim held by Katahn Associates, Inc. is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6).

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 7058.