**In re Martin BRUETMAN, Debtor.**

**Diego Herbstein, Plaintiff,**

v.

**Martin Bruetman, Defendant.**

**Nos. 99 B 09107, 99 A 00811.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

March 8, 2001.

---

Richard Steck, Chicago, IL, for Plaintiff.

Martin E. Bruetman, pro se.

## AMENDED MEMORANDUM OPINION ON CROSS MOTIONS FOR SUMMARY JUDGMENT ON COUNTS I AND II [1]

JACK B. SCHMETTERER, Bankruptcy Judge.

This adversary proceeding relates to the Chapter 7 bankruptcy petition filed by Martin Bruetman ("Bruetman" or "Debtor") on March 22, 1999 under 11 U.S.C. § 101 *et seq.* Diego Herbstein ("Herbstein" or "Plaintiff") filed a five count Amended Adversary Complaint ("Adversary Complaint") seeking to deny Bruetman's discharge and to determine the dischargeability of a debt owed to him by Bruetman. The debt is evidenced by a judgment entered in the U.S. District Court for the Southern District of New York on August 10, 1992.[2]

Herbstein moved for summary judgment on Counts I and II of this Adversary in which the debt thereby arising is alleged to be nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4) respectively. The basis for Plaintiff's motion is his argument that due to entry of that District Court judgment the doctrine of collateral

---

1. This Amended Opinion replaces an earlier Opinion that has been withdrawn.

2. Debtor's long history of litigation with Herbstein and others is set forth in several opinions out of the District Court in Boston and our Circuit Court: *Philips Medical v.*

*Bruetman,* 982 F.2d 211 (7th Cir.1992), *Philips Medical v. Bruetman,* 8 F.3d 600 (7th Cir.1993), *Herbstein v. Bruetman,* 1993 WL 62375, 1993 U.S. Dist. Lexis 2573 (D.Mass. 2/16/93), and *Herbstein v. Bruetman,* 241 F.3d 586 (7th Cir.2001).

estoppel applies and precludes Debtor from contesting nondischargeability of the judgment debt alleged in those two counts. Bruetman objects to application of collateral estoppel because the New York case never went to trial, and argues that the judgment was by way of default as a sanction for his failure to give ordered discovery. He also contends that Herbstein is judicially estopped to assert collateral estoppel.

Bruetman filed his own cross motion for summary judgment on Counts I and II. He contends that issues asserted in those counts were fully litigated in Argentina courts and were there determined adversely to Herbstein. Bruetman contends that the decisions there are entitled to recognition under principles of comity and that doctrines of res judicata and collateral estoppel preclude Herbstein from arguing that the judgment debt is nondischargeable.

Dr. Bruetman appeared here *pro se,* though his filings demonstrated some sophisticated knowledge of law suggestive of behind-the-scenes legal counseling. However, he has lost on the merits.

For reasons stated below, the New York District Court default judgment is given collateral estoppel effect and Plaintiff's motion for summary judgment on Counts I and II herein will be allowed, while Defendant's cross motion for summary judgment on Counts I and II will be denied.

### UNDISPUTED FACTS

The parties filed their statements supporting and opposing summary judgment under Local Bankruptcy Rule 402M and 402N as required for consideration of Herbstein's motion for summary judgment, and briefs. That briefing was completed and Dr. Bruetman was told from the bench that nothing further would be considered on Plaintiff's motion. While he did file a Rule 402N statement and affidavit opposing Plaintiff's motion, he did not contest the facts and proceedings shown in the New York case on which the judgment for Plaintiff rests.

Bruetman filed a Rule 402M statement with his cross-motion for summary judgment (originally considered despite a contrary reference in the earlier Opinion). However, a schedule was not set giving Plaintiff an opportunity to file a Rule 402N response to Bruetman's asserted facts and response to the cross motion for summary judgment. This Opinion assumes *arguendo* the accuracy and authenticity of every document and fact asserted by Bruetman in connection with his motion (which said documents and facts are not, however, treated as responsive to Herbstein's motion since they were not offered in response thereto). Since his cross motion thereby considered is factually inadequate to support summary judgment as a matter of law, briefing by Plaintiff opposing that motion is unnecessary.

### *History of Litigation*

The following undisputed facts appear from filings:

In late 1986 or early 1987, Bruetman solicited Herbstein to invest money in a business venture to set up a sophisticated medical diagnostic center to be established in Buenos Aires, Argentina. According to Bruetman's proposal, the diagnostic center would provide its services to the Guemes Hospital in Buenos Aires.

Under Bruetman's proposal, he and Herbstein were to provide equal amounts of capital to fund the venture. In April 1987, Herbstein began sending payments to Bruetman through the mail or through wire transfers. Herbstein also made payments directly to a bank account in Argentina set up to begin establishing the proposed company. By June 1987 Alta Technologia Medica S.A. ("Altec-1") was incorporated in Argentina. Bruetman became the President and Chief Executive Officer, Herbstein became Vice President. Both men were to be equal owners of the company stock.

By July 1987, Herbstein's payments to Altec–1 had totalled about $447,000. According to Herbstein, those funds were intended as his capital contribution to the business, in exchange for which Herbstein was to be given 50% of Altec 1's issued stock.

By August 1987, Altec–1 had entered into an agreement with the Guemes Foundation to import, install, and operate medical equipment purchased from Phillips Export B.V. ("Philips"). In exchange for Altec 1's services, it was to receive a portion of the revenue generated from use of the equipment.

However, by late 1987, Herbstein alleges that he discovered that Bruetman was using Altec–1's time, money, personnel, overhead and resources to develop another business unrelated to the Guemes Hospital services. Those other transactions purportedly benefitted Bruetman and High Tech, another corporation in which Bruetman was controlling shareholder and Board Chairman.

Herbstein and Bruetman then agreed to some changes. Altec–1 was renamed Imagenes Por Computacion ("IXC"), and Bruetman formed a new business venture which was also named Alta Technologia Medica S.A. ("Altec–2"). Altec–2 was to have nothing to do with the Guemes diagnostic center but would instead pursue and benefit the interests of Bruetman and High Tech. In mid 1988 Bruetman transferred all of his shares in IXC to Altec–2. High Tech then owned 49% of Altec–2 stock; Bruetman's son Carlos held 43% thereof, and Herbstein held 8%.

IXC assumed responsibility for contractual obligations previously held by Altec–1 for providing and servicing sophisticated medical imaging equipment for the diagnostic center of the Guemes Hospital. Plaintiff and Bruetman transferred their capital contributions and financial interests in what had been Altec–1 to IXC and thereby became the sole and co-equal shareholders of IXC. Bruetman became the President, Chief Executive Officer and Chairman of the Board; Plaintiff became the Vice President.

Disputes later arose between Herbstein and Bruetman. In March of 1989, Bruetman filed a request with the Criminal Courts in Argentina for an investigation concerning his allegations of fraud. Herbstein was joined in that proceeding as a respondent. On October 10, 1990 a decision was rendered in that criminal proceeding, but that decision (discussed further below) merely ruled that no one was to be prosecuted and the action was to be "temporarily dismissed", a dismissal that turned out to be permanent.

In August 1989, Herbstein filed a civil Complaint in the Commercial Division of the Argentine court system. That suit requested removal of Directors Bruetman, the President of IXC and another director. It also sought determination that the Directors sought to be removed had wrongfully carried out their duties as Directors of IXC. To support that request, Herbstein alleged certain facts that he claimed to constitute wrongful discharge of corporate duties that damaged the corporation business. Herbstein sought therein compensation for damages that he allegedly suffered in consequence of the various defendants' actions in managing the corporation.

On October 16, 1989, before any ruling in the Argentine civil case, Herbstein filed a Complaint in the United States District Court for the Southern District of New York. That Complaint contained several complicated and detailed claims against different combinations of defendants including Bruetman. It alleged that Bruetman fraudulently misrepresented to Herbstein in the business deal between them that all money transferred by Herbstein would be used to fund Altec–1 operations. Those funds, some paid directly to Bruetman and others to a bank account set up for the business venture, were allegedly diverted to benefit Bruetman and High Tech. Moreover, Herbstein alleged that

when IXC was formed, Bruetman promised Herbstein that he would be credited with all his capital contributions to Altec–1, but contended that he was never fully credited for all his capital contributions. He also alleged in that suit that several defendants, including Bruetman, sent a letter to him in New York which misrepresented both IXC's financial status and Herbstein's obligations to Altec–2 and High Tech. These and other allegations were contained in a five-count Complaint (the "New York Complaint" or "New York Case").

On January 17, 1990, Bruetman and other defendants moved to dismiss Herbstein's New York District Court case on the grounds of comity because of the then pending Argentine civil proceedings, or alternatively for *forum non conveniens*. Alternatively, those defendants moved to stay the New York Case until the civil proceedings in Argentina were resolved. On July 11, 1990, the District Court denied these motions. Afterwards, on August 10, 1992, a judgment was entered against Bruetman in the District Court suit under circumstances more fully described below.

One year later on August 5, 1993, in Argentina, the lower court issued a ruling in the civil case. Although Herbstein's suit there was labeled by him as an "individual action for responsibility", the court ruled by reason of facts alleged that any damages claimed could only be awarded for any acts found directly detrimental to the corporation and not for actions that harmed an individual stockholder. Accordingly, the lower Argentine Court determined that wrongful conduct alleged by Herbstein did not support an individual action on his own behalf. The ruling then reclassified the action initiated by Herbstein and analyzed the viability of the action as a shareholder derivative suit on behalf of the corporation, concluding that only viewed as such did the case state a cause of action.

The lower Argentine court decided to remove Bruetman and another defendant from their positions as Directors and recommended appointment of a new Board of Directors which was to be entrusted with producing new financial statements for the period ending on August 31, 1988.

That decision in the Argentine lower court was appealed. The reviewing court reversed the lower court, ruling that the action could not be reclassified as a derivative suit on behalf of the corporation.

The net result (as shown by Argentine court documents tendered herein by Bruetman) was that no final judgment was shown by filings here to have been entered in Argentina for or against any party in either the civil action or criminal proceeding.

Bruetman filed for bankruptcy on March 22, 1999, leading to the instant Adversary case. More detailed undisputed facts follow below.

## A. *Herbstein's Motion for Summary Judgment*

1. In *Herbstein v. Bruetman, et al.* 89–CV–6864, Herbstein sued Bruetman and others in the United States District Court for the Southern District of New York ("Complaint"), on October 16, 1989. The Complaint was pleaded in five counts, Racketeering (Count I), Breach of Fiduciary Duty (Count II), Fraudulent Representations (Count III), Fraudulent Concealment (Count IV), and Conversion (Count IV).

2. The proceeding against Bruetman remained pending for about three years, from October 16, 1989, until entry of judgment against Bruetman on August 10, 1992. (On October 30, 1990 the case was closed briefly until reopened on November 1, 1990.)

3. Bruetman was represented by counsel throughout the New York proceeding. His counsel filed an answer, engaged in discovery, and participated in preparation of a Pretrial Order filed by the parties.

4. During discovery proceedings, the parties deposed at least 12 witnesses and exchanged thousands of pages of documents.

5. The deposition of Herbstein took place on seven separate days and generated a transcript in excess of 1200 pages.

6. The deposition of Bruetman took place on ten separate days and generated a transcript in excess of 1800 pages.

7. Bruetman and other defendants retained an expert witness who was a consultant to the accounting firm of Coopers and Lybrand to give testimony at trial regarding certain issues relating to all participating defendants.

8. The attorneys for both Herbstein and Bruetman participated in preparing a Final PreTrial Order, and Bruetman's attorneys submitted certain sections to Herbstein's attorneys for inclusion therein.

9. On December 18, 1991, the parties submitted the original of their Final Pre Trial Order (signed by attorneys for all parties) to the District Court Judge presiding at the final pretrial conference, although the Judge did not file that document with the District Court Clerk until after entry of the judgment in that case.

10. The proposed Pretrial Order listed 252 exhibits for Plaintiff and more than 700 exhibits for the Defendant.

11. The proposed Pretrial Order was submitted to the court jointly by counsel for all the parties on December 18, 1991. The Court set a trial date of August 10, 1992.

12. On or about February 21, 1992, Bruetman and other defendants filed a motion for summary judgment which the District Judge denied by order entered on June 19, 1992, for reasons discussed below.

13. In June of 1992, some discovery issues remained outstanding. Those arose from an order entered in October of 1991 wherein the District Judge had granted Plaintiff's application for an order requiring Bruetman to disclose his assets and financial conditions, those being relevant to punitive damages to be sought by Herbstein in the forthcoming trial. Bruetman did not comply with that order and a second order was entered to the same effect on or about March 12, 1992. Bruetman failed to comply with that order as well. On July 14, 1992, the Court entered a third order on Bruetman to disclose his financial information by July 23, 1992, this time specifying that he would suffer the penalty of a default judgment to be entered "for the relief demanded" in Plaintiff's Complaint and paragraph 6(b) of the Final Pretrial Order dated December 18, 1991 "... if there was not compliance by him."

14. In the face of that specific warning, Bruetman's lawyer advised the District Judge by letter on July 23, 1992 that he would not comply with the order to disclose assets because of circumstances and other litigation. He acknowledged in that letter that Bruetman was subject to entry of a default judgment because of such disobedience, and further advised that no appeal would be taken from any default order to be entered as a result of failure to comply with the asset disclosure orders.

15. On August 10, 1992, the District Judge entered a default judgment against Bruetman, finding that Defendant Bruetman had willfully failed to comply with Court orders, and expressly determined that there was no just reason to delay enforcement of the judgment. That judgment was not appealed.

16. Part 6 of the Final Pretrial Order referred to in the earlier order of July 14th provided as follows:

6. The following are all of the claims for damages, counterclaims or cross-claims or for other relief asserted by the plaintiff in this action, as of the date of this conference.

(a) Plaintiff asserts the following claims for damages:

(1) Civil RICO

(2) Breach of fiduciary duty

(3) Fraudulent representations

(4) Fraudulent concealment

(5) Conversion

(b) On the claims stated above, plaintiff seeks damages as follows:

(1) the sum of $420,100, representing the amount of plaintiff's capital contributions to and investment in IxC by reason of defendants' fraudulent conduct;

(2) a sum in excess of $235,000, representing the amount that plaintiff has spent in order to protect his investment in and ownership of IxC by reason of defendants' fraudulent conduct;

(3) the sum of $420,100, representing the minimum value of plaintiff's financial and ownership interest in IxC;

(4) treble the amount of damages stated above, plus the cost of this suit, including attorneys' fees;

(5) punitive damages; and

(6) interest on the above.

Herbstein was awarded judgment in the amount of $2,737,924.40 against Bruetman. That judgment was calculated based on Plaintiff's claims asserted in the Pretrial Order as follows: actual damages totalling $655,100 [Pretrial Order, part 6(b) paragraphs one and two] trebled under the RICO statute to $1,965,300, plus attorney's fees and expenses totalling $610,487.15 plus interest amounting to $162,137.25, for the judgment total of $2,737,924.40 after punitive damages prayed for were waived. [DePetris' Supplemental Affidavit.]

### B. *Bruetman's Cross Motion for Summary Judgment*

1. In March 1989, Bruetman filed a request for an investigation with the Criminal Courts in Argentina. Herbstein was joined in that proceeding as an adversary respondent pursuant to Bruetman's request. On October 10, 1990 a decision was rendered in that criminal proceeding placing it into limbo by "temporarily" dismissing it, finding inadequate evidence to warrant any finding of fraud. No judgment was rendered for any party and no one was ordered to be prosecuted. Since the investigation was never reopened, it appears to have become finally closed at some point. Bruetman now argues in effect that a finding of no basis to charge criminal fraud against him or Herbstein under Argentine law amounted to a judgment exonerating him from civil fraud under U.S. law, but no such judgment was entered.

2. In August 1989, Herbstein filed a civil Complaint in the Commercial Division of the Argentine court system. On August 5, 1993, (almost a year after entry of the New York District Court judgment), the Argentine lower court issued a ruling in that case, finding that Herbstein could bring a stockholder derivative action on behalf of the corporation, but could not claim personal damages for injury to the company. That decision was appealed and on December 19, 1995, the Argentine Appellate Court issued an opinion reversing the lower court. No judgment was shown here to have been entered either for or against Bruetman. He was not exonerated from any wrongdoing against the company, let alone against Herbstein.

### *Miscellaneous*

Additional facts set forth in the discussion below are also found to be undisputed.

### *JURISDICTION*

Jurisdiction lies under 28 U.S.C. § 1334 and 28 U.S.C. § 157. This matter has been referred here by Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue is proper under 28 U.S.C. § 1409. This matter constitutes a core proceeding under 28 U.S.C. 157(b)(2)(I).

### *STANDARDS FOR SUMMARY JUDGMENT*

Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to Adversary proceedings by Rule 7056 Fed.R.Bankr.P.,

provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See also Russo v. Health, Welfare & Pension Fund, Local 705,* 984 F.2d 762 (7th Cir.1993).

Initially the moving party bears the burden of demonstrating absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has met that burden, the non-moving party must go beyond the pleadings and bring forth specific facts to establish that there is a genuine issue for trial. *Becker v. Tenenbaum-Hill Assoc., Inc.,* 914 F.2d 107, 110 (7th Cir.1990). See also *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmoving party is required to do more than show mere existence of some metaphysical doubt as to the material facts or some alleged factual dispute between the parties in order to defeat the motion, unless the disputed fact is determinative of the outcome under applicable law. *Id.* at 586, 106 S.Ct. at 1356; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The nonmoving party may not rest on its pleadings or on conclusory allegations in affidavits. *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920–21 (7th Cir.1994); *Cusson-Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir.1992).

In determining whether a genuine issue of material fact exists the Court must "construe all facts in the light most favorable to the non moving party and draw all reasonable and justifiable inferences in that party's favor." *Popovits v. Circuit City Stores, Inc.,* 185 F.3d 726, 731 (7th Cir.1999); See also *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. However, not every conceivable inference must be drawn in favor of the nonmoving party, only those inferences that are reasonable and present a sufficient disagreement between the parties. *Richards v. Combined Ins. Co. of Am.,* 55 F.3d 247, 251 (7th Cir.1995); See also *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512.

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Counts I and II of Herbstein's Adversary Complaint are based on § 523(a)(2)(A) and § 523(a)(4).

Section 523(a)(2)(A) excepts from discharge any debt:

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

> false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

> * * *

Section 523(a)(4) excepts from discharge any debt:

> for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . .

Herbstein argues that the issues of fraudulent misrepresentation and fraud or defalcation while acting in a fiduciary capacity, or in the alternative embezzlement or larceny, were determined by the District Court default judgment. Accordingly, Herbstein argues, Bruetman is collaterally estopped from contesting those issues here and therefore cannot contest the dischargeability of the debt under Counts I and II.

A party asserting issue preclusion by reason of collateral estoppel has the burden of establishing its applicability. *Freeman United Coal Mining Co. v. Office of Workers' Compensation Program,* 20 F.3d 289, 294 (7th Cir.1994). Collateral estoppel refers to a judgment's effect of foreclosing litigation in a subsequent action involving those issues actually and

necessarily decided in a prior suit. *Kling-man v. Levinson*, 831 F.2d 1292, 1294 (7th Cir.1987); *Havoco of America, Ltd. v. Freeman, Atkins & Coleman, Ltd.*, 58 F.3d 303, 307 (7th Cir.1995); and *Adair v. Sherman*, 230 F.3d 890 (7th Cir.2000). It is a doctrine which protects litigants from the burden of re-litigating identical issues with the same party or privy, and promotes judicial economy by preventing unnecessary litigation. *Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir.1994). The Supreme Court has held that collateral estoppel principles apply in proceedings seeking to bar bankruptcy discharge under 11 U.S.C. § 523(a). *Grogan v. Garner*, 498 U.S. 279, 285, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991).

█ Federal courts must give full faith and credit to the collateral estoppel effects of state court judgments under state standards, *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). However, in determining the preclusive effect of a prior federal judgment, as in this case, federal standards apply. *Havoco*, 58 F.3d at 307. As set forth in *Havoco* and other precedents, four requirements must be met for collateral estoppel to apply to a federal court judgment: (1) the issue sought to be precluded must be the same as that involved in the prior action, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action. See also *Klingman*, 831 F.2d at 1295; and *Adair*, 230 F.3d at 893.

The fourth requirement was obviously met; Bruetman was fully and aggressively represented by his counsel in the New York litigation. The remaining elements require some discussion, but as shown below each of those additional elements was also shown.

### A. Same Facts and Issues

█ Whether issues are identical for purpose of collateral estoppel is a question of law. *E.B. Harper & Co. Inc. v. Nortek, Inc.*, 104 F.3d 913, 922 (7th Cir.1997).

Bruetman argues that the issues sought to be precluded here are not the same as those involved in the New York action, but he is wrong.

█ Count I of the Adversary Complaint here seeking to deny discharge of the judgment debt owed Herbstein under 11 U.S.C. § 523(a)(2)(A) requires a finding that (1) Debtor made a representation "either knowing it to be false or with reckless disregard for the truth"; (2) the misrepresentation was made with the intent to deceive; and (3) the Plaintiff actually and justifiably relied on the misrepresentation. *Field v. Mans*, 516 U.S. 59, 74–75, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995); *Goldberg Sec. Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 525 (7th Cir.1992).

█ For a debt to be nondischargeable in Count II under § 523(a)(4), debtor must either have committed embezzlement or larceny, or had a fiduciary duty established either by an express trust or by a relationship of special trust and substantial inequality of power or knowledge and the debt was caused by the debtor's fraud or defalcation in breach of that duty. *In re Woldman*, 92 F.3d 546, 547 (7th Cir.1996); *In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir.1994). Embezzlement of the kind required to trigger the statutory exception to discharge is the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *In re Weber*, 892 F.2d 534, 538 (7th Cir.1989).

█ The same events which were pleaded in Herbstein's Complaint in the District Court provide the factual basis for his contention here that Bruetman's judgment debt is nondischargeable on both counts.

The Complaint in the New York litigation set forth causes of action in five counts for racketeering, fraudulent representations, breach of fiduciary duty, fraudulent concealment and conversion, with respect to the same business venture and history alleged here. In the Racketeering Count (Count I) of the New York District Court Complaint, Herbstein alleged that he transferred hundreds of thousands of dollars to Bruetman "at the specific request and urging of the defendant Bruetman, who falsely and fraudulently represented that said transfers were needed to fund the operations of said business and would be used as part of plaintiff's capital contributions to said business."

Herbstein alleged further therein that in fact Bruetman "intended to misappropriate monies from plaintiff and from IXC and its predecessor and to use the monies for his own benefit and that of the defendant High Tech." Herbstein further alleged that Bruetman "falsely and fraudulently represented to plaintiff in New York that all of plaintiff's capital contributions to IXC and its predecessor would be transferred to IXC and credited toward his one-half interests in IXC when, in truth and fact, the defendant Bruetman never credited plaintiff with all of his capital contributions and never intended to do so." Herbstein further alleged in that case that Bruetman "engaged in a scheme to defraud plaintiff and IXC and its predecessor by misappropriating monies from IXC and its predecessor and by using those monies for purposes that had nothing to do with the business of IXC or its predecessor and which generally benefitted Bruetman, his family or his other companies, High Tech or Altec–2."

The Complaint in the New York litigation set forth causes of action for racketeering, fraud, breach of fiduciary duty and conversion. It alleged a scheme to divest Plaintiff of his money which the District Judge described (in his order and opinion filed June 19, 1992, two months before judgment was entered) as alleging as a three phase operation in which the Defendant (1) extracted money from the Plaintiff with false representations that those funds were to constitute capital contributions of Plaintiff to a corporation in which Defendant made an equal investment and which needed the money to purchase equipment and engage in operations, then (2) siphoned off the money through fraudulent bond purchases among other things, and finally (3) used false and falsified documents to divest Plaintiff of his interest in the corporation.

The facts alleged in that case fall well within the meaning of earlier cited applicable Bankruptcy Code provisions setting forth elements for exceptions from discharge.

The Defendant argues that the New York Complaint did not contain allegations of all of the elements of a nondischargeability cause of action under § 523(c)(2)(A) for false pretenses, false representations or actual fraud, but he does not specifically point out any missing element. Actually, that Complaint was replete with allegations of false pretenses, false representations and fraud. These appear at those paragraphs of the New York Complaint numbered 13, 14, 15, 19, 28, 29, 30, 31, 32, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 54, 55, 57, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77. Reliance to the detriment of Plaintiff is set forth at paragraph 113.

The same matters were alleged in this Adversary case, and therefore the "same issue" requirement is met. *See Katahn Assoc., Inc. v. Wien (In re Wien),* 155 B.R. 479, 484 (Bankr.N.D.Ill.1993).

### B. *Actually Litigated*

Bruetman further contends that the default judgment entered in the District Court litigation was not a result of actual litigation, and therefore there is no collateral estoppel effect. However, Bruetman had a full and fair opportunity to litigate the claim of this Plaintiff in New

York from 1989 to 1992. He vigorously participated in those proceedings, with counsel, until he decided to abandon his defense. Then he willfully disobeyed repeated court orders and suffered entry of a default judgment.

 Default judgments are not generally given preclusive effect under the federal collateral estoppel doctrine because the usual default judgment cannot satisfy the "actually litigated" requirement. *Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir. 1994); *U.S. v. Bailey*, 957 F.2d 439, 443 (7th Cir.1992); *Grip–Pak, Inc. v. Ill. Tool Works, Inc.*, 694 F.2d 466, 469 (7th Cir. 1982). However, when a defaulting party could reasonably have foreseen the conclusive effect of his action, collateral estoppel may apply to bar re-litigation of the issues resolved by the default judgment. *See Klingman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir.1987).

 Many opinions have given preclusive effect to default judgments under facts similar to those presented here where judgments were entered against parties who actively participated in litigation and then were at fault in preventing its resolution. A full trial is not always necessary to satisfy the requirement of actual litigation. *La Preferida, Inc. v. Cerveceria Modelo*, 914 F.2d 900, 906 (7th Cir.1990). *See also Wolstein v. Docteroff,* 133 F.3d 210, 215 (3d Cir.1997); *FDIC v. Daily (In re Daily)*, 47 F.3d 365, 368 (9th Cir.1995); *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1325 (11th Cir.1995); *In re Wien*, 155 B.R. 479 (Bankr.N.D.Ill.1993); and *Casey v. Transport Life Ins. Co.(In re Dorsey)*, 1993 WL 340928 (Bankr.N.D.Ill.1993). The foregoing precedents did not present typical default judgments in which defendants neglected or elected not to participate in the litigation in any way. Rather they were cases in which defendants participated actively and with full opportunities to present their cases, but then frustrated efforts to bring the actions to trial. Courts are reluctant to let such defendants get a second bite of the litigation apple. *See e.g. Bush*, 62 F.3d at 1325.

The New York District Court decision was not a routine default judgment. Bruetman answered the Complaint; engaged in extensive discovery; filed, briefed and argued a motion for summary judgment; and participated in preparation of a Final Pretrial Order. Bruetman had notice that a default judgment would be entered against him if he did not comply with the District Court's order to disclose assets and financial conditions. The District Court allowed Bruetman about ten months to comply with repeated orders, at the end of which Bruetman's lawyer wrote a letter to the District Judge acknowledging that a default judgment would be entered against him because of his failure to comply.

An affidavit filed by Bruetman here seeks to go behind the record of the New York judgment to show at some length his reasons for not complying in that case with the orders to disclose his financial data. Those asserted reasons involved another piece of litigation and judgment entered against him before a judge of our District Court, and resulting appellate activity in this Circuit. *See Philips Medical Systems Int'l B.V. v. Bruetman*, 982 F.2d 211 (7th Cir.1992) and *Philips Medical Systems Int'l B.V. v. Bruetman*, 8 F.3d 600 (7th Cir.1993). Mr. James McGuh, who was his attorney in both the New York and Chicago cases, presented his affidavit here giving reasons for Bruetman's failure to comply with repeated orders of the New York District Judge.

However the District Court Judge in New York found that Bruetman willfully failed to comply with the orders of that Court, and determined that there was no just reason to delay any enforcement of the resulting judgment. That Judge treated Bruetman's refusal to give financial information in a case soon to go to trial that included a punitive damage claim against him as a major interference with Plaintiff's effort to prepare for trial. Such informa-

tion was directly relevant to the punitive damage issue. *Vasbinder v. Scott,* 976 F.2d 118, 121 (2d Cir.1992); *Brink's Inc. v. City of New York,* 546 F.Supp. 403, 413 (S.D.N.Y.1982); *Deborah v. Diorio,* 153 Misc.2d 708, 583 N.Y.S.2d 872, 875 (Civil Court New York County 1992). Efforts now to explain or justify reasons, legal or economic, for refusing the ordered information are merely a collateral attack on the New York judgment.

The McGuh affidavit also stated in what must be considered as his conclusion of law rather than an objective fact that the New York default judgment should be viewed only "as a discovery sanction unrelated to the issues and merits in the case." The conclusion by Bruetman's former counsel that nothing factual was determined by the New York judgment must be considered in light of the record earlier discussed, and that counsel's conclusions can hardly dispose of this issue by a conclusory affidavit.

▆▆▆ While collateral estoppel and issue preclusion effect may be given to default judgments after litigation in which defendants actively participated, it must first be clear that the resulting judgment necessarily relied on a sufficient factual basis to warrant issue preclusion, and in a nondischargeability case the bankruptcy judge must be able to determine what facts were decided. *In re Wien,* 155 B.R. 479, 485 (Bankr.N.D.Ill.1993). Ordinarily, "[d]etailed findings of fact from earlier proceedings are necessary to enable the bankruptcy court to determine which issues were actually litigated in the earlier proceedings." *In re Dorsey,* 1993 WL 340928, at *7 (Bankr.N.D.Ill.1993). When a default judgment has been entered, the record rarely reflects findings of fact sufficient to meet the requirement that the fact issues to be precluded have been actually and necessarily litigated. *Id.* Preclusive effect can not be given to a default judgment if the findings were "conclusory" or the record, pleadings, and affidavits do not enable the other court to discern the factual basis of the judgment and determine

what was essential to the award of the default judgment. *Id.*

The District Judge in the New York Case did not enter either Findings of Fact or Conclusions of law. The judgment "ordered and adjudged that plaintiff recover jointly and severally of the defendants Martin E. Bruetman, High Tech Medical Parks Development Corp. and Alta Technologia Medica, S.A. the sum of $2,737,924.40 with interest thereon as provided by law, and his costs of this action." While that default judgment did not itself expressly indicate on its face the manner in which the judgment sum was calculated, from review of the judgment amounts requested by Plaintiff in the Final Pre Trial Order and supporting materials presented here by Plaintiff in which he demonstrated how the New York judgment was calculated (as earlier described), it is clear that treble damages were awarded. Because Count I (the Racketeering Count) in the District Court Complaint was the only Count in that case in which treble damages were requested, the New York District Judge necessarily decided in Herbstein's favor on that Count.

Bruetman nonetheless argues that the default judgment was not sufficient to establish facts alleged in the District Court Complaint, and that even if facts were established by the default judgment, such facts would not meet requirements for an exception to discharge under 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(4).

▆▆▆ A default judgment has the effect of establishing a defendant's liability as a matter of law for each well pleaded allegation of a plaintiff's complaint. *Dundee Cement Co. v. Howard Pipe & Concrete Prod. Inc.,* 722 F.2d 1319, 1323 (7th Cir.1983). In addition, a default judgment establishes, as a matter of law, that a defendant is liable to plaintiff as to each cause of action alleged in the complaint. *Breuer Electric Mfg. Co. v. Toronado Systems of America, Inc.,* 687 F.2d 182 (7th Cir.1982). *See also Brown v. John H.*

*Beyer, Inc.*, 1999 U.S. Dist., Lexis 13596 (S.D.N.Y.1999), citing *Au Bon Pain v. Artect, Inc.*, 653 F.2d 61 (2d Dist.1981); *In re Crazy Eddie Securities Litig.*, 948 F.Supp. 1154, 1160 (E.D.N.Y.1996). As such, the default judgment entered by the New York District Judge on Count I of the New York Case was tantamount to a finding for Herbstein on all allegations and elements pleaded in the Count I Racketeering Count of the District Court Complaint.

■ The conduct pleaded in the New York case as thus established falls within exceptions to bankruptcy discharge. The purpose of bankruptcy law is to provide a fresh start for honest but unfortunate debtors, not to protect intentional misconduct. *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) (unconscionable commercial practices sufficient for exception). Even damages for breach of contract may be nondischargeable if acts are committed with intent to cause harm, *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), and certainly may be nondischargeable when coupled with misrepresentation or other fraudulent deceit. *McClellan v. Cantrell*, 217 F.3d 890 (7th Cir.2000).

Indeed, all required elements under 11 U.S.C. § 523(a)(2)(A) and § 523(a)(4) were actually litigated.

**1. *Count I under § 523(a)(2)(A)***

As earlier noted, to bar a debt from dischargeability under § 523(a)(2)(A) for false pretenses or false representation, the following must be established: (1) Debtor made a representation "either knowing it to be false or with reckless disregard for the truth"; (2) the misrepresentation was made with the intent to deceive; and (3) the Plaintiff actually and justifiably relied on the misrepresentation. *See Field v. Mans*, 516 U.S. 59, 74–75, 116 S.Ct. 437, 446 (1995); and *Goldberg Sec. Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 525 (7th Cir.1992).

■ An intent to deceive may logically be inferred from a false representation which the debtor knows or should know will induce another to advance money to the debtor. *Carini v. Matera (In re Matera)*, 592 F.2d 378 (7th Cir.1979); *In re Kimzey*, 761 F.2d 421, 424 (7th Cir. 1985). There is rarely direct evidence of the defendant's state of mind at the time of an alleged fraud. *Wien*, 155 B.R. at 488. Thus, the finding as to the fraudulent intent of the debtor will often have to be established by circumstantial evidence. *Id.*

■ The reliance necessary to be found under § 523(a)(2)(A) must be justifiable. Justifiable reliance is an intermediate level of reliance. It is less than reasonable reliance, but more than mere reliance in fact. *Field*, 516 U.S. at 74–75, 116 S.Ct. at 446. The justifiable reliance standard imposes no duty to investigate unless the falsity of the representation is readily apparent. *Id.* at 71, 116 S.Ct. at 444.

■ In the Racketeering Count of the New York District Court Complaint, Herbstein alleged that he transferred hundreds of thousands of dollars to Bruetman at Bruetman's specific request and urging; that Bruetman falsely claimed and fraudulently represented that such transfers were needed to fund operations of a business that Herbstein and Bruetman had created ("IXC"), and that those payments would be used as part of Herbstein's capital contributions. Herbstein alleged further that in fact Bruetman intended to misappropriate monies from Herbstein and from IXC and its predecessor and to use the monies for his own benefit, his family's benefit and that of another company in which Bruetman owned substantial shares and that Bruetman did so.

Those allegations which were deemed to be established when judgment was entered on the Racketeering Count in the New York Case are quite sufficient to meet all three elements required under

§ 523(a)(2)(A). It was thereby found that Bruetman induced Herbstein to invest money by asserting that the money would be used as part of Herbstein's capital contributions and was needed to fund operations of the business; that Bruetman never credited Herbstein with all of his capital contribution, and never intended to; and that the purpose for Bruetman obtaining the investment from Herbstein was to divert and misappropriate the money for his own benefit, the benefit of his family and the benefit of his companies.

The allegations thereby established and the payments made by Herbstein easily support an inference that Herbstein justifiably relied on Bruetman's false representations. Nothing alleged in those pleadings support a reasonable inference that Herbstein should not have believed and justifiably relied on Bruetman's assertions. Nor were any facts pleaded that would support an inference that it was or shall have been apparent that Bruetman would use funds invested by Herbstein for any purpose other than as a capital contribution for benefit of their jointly owned company.

Therefore, all elements of § 523(a)(2)(A) were established.

### 2. Count II under § 523(a)(4)

As to Count II of the Adversary Complaint here, Bruetman argues that Herbstein cannot meet the elements required under § 523(a)(4) because Bruetman was not acting as a fiduciary as required under that provision. For a debt to be nondischargeable under § 523(a)(4), debtor must either have committed embezzlement or larceny, or breached a fiduciary duty. *In re Woldman*, 92 F.3d 546, 547 (7th Cir. 1996); *In re Marchiando*, 13 F.3d 1111, 1116 (7th Cir.1994).

 However, it need not be determined here that Bruetman was a fiduciary because the embezzlement element was clearly established. In § 523(a)(4), the term "while acting in fiduciary capacity" does not qualify the words "embezzlement" or "larceny". Therefore, the discharge exception applies even when the embezzlement was committed by someone not acting as a fiduciary. *Green v. Pawlinski (In re Pawlinski)*, 170 B.R. 380, 390 (Bankr. N.D.Ill.1994). Embezzlement of the kind required to trigger the statutory exception to discharge is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. *In re Weber*, 892 F.2d 534, 538 (7th Cir.1989). To establish embezzlement in Count II of this Adversary Complaint, Herbstein must show that Debtor appropriated the subject funds for his own benefit, and did so with fraudulent intent or deceit. *Id.*

 Herbstein alleged in Count I of his New York District Court Complaint that beginning in late 1986 Bruetman, acting in concert with others, falsely and fraudulently represented to Herbstein that all the money Herbstein transferred was needed to fund operations of IXC or its predecessor and would be used as part of plaintiff's capital contributions to IXC and its predecessor Altec–1, whereas Bruetman actually intended to and did in fact misappropriate monies from Herbstein and from IXC and its predecessor for use of the monies to his own benefit and that of his company, High Tech. Herbstein further alleged that Bruetman falsely and fraudulently represented to Herbstein that all of his capital contributions to IXC and its predecessor would be transferred to IXC and credited toward his one-half interests in IXC, whereas Bruetman never credited Herbstein with his capital contributions and never intended to do so. Herbstein further alleged that Bruetman engaged in a scheme to defraud plaintiff and IXC and its predecessor by misappropriating monies from IXC and its predecessor and by using those monies for purposes that had nothing to do with the business of IXC or its predecessor and which generally benefitted Bruetman, his

family or his other companies, High Tech or Altec–2.

The Defendant Bruetman argues that his only fiduciary duty within the meaning of the Bankruptcy Code was to IXC not to Plaintiff. Even assuming *arguendo* that to be correct, embezzlement need not be directly from an individual, but might be as to funds that someone paid to a corporation employing the perpetrator. *Moonan v. Bevilacqua,* 53 B.R. 331, 334 (Bankr. S.D.N.Y.1985). Bruetman's own authority agrees. *Sims v. Landis,* 1997 WL 428504, 1997 Bankr.Lexis 1214 (N.D.Ill.1997) (embezzlement by employee of medical corporation rendered that employee liable to individual physicians).

Embezzlement was therefore established by the New York judgment.

## C. *Essential to the Judgment*

██ Bruetman also argues that no factual determinations were made that were essential to the default judgment, and contends that the only determination essential to the default order concerned his noncompliance with ordered discovery. However, as earlier discussed, entry of the treble damage default judgment established the liability on Bruetman's part under Count I of the District Court Complaint.

The sizeable award of $2,737,924 awarded in the default judgment showed a trebling of damages itemized in the Final Pretrial Order drafted and submitted by counsel for the parties to the District Judge. Because the Racketeering Count I was the only count that requested treble damages, a finding for Herbstein on allegations in that count were indeed essential to that judgment. The allegations discussed earlier were included in that Racketeering Count I of the District Court Complaint.

Bruetman's voluminous *pro se* papers have been read, but his submissions do not contradict what happened in the New York Case and must be given no weight on issues posed here. For example, he tried to show that there were good reasons not to comply with the order to disclose final data, but he may not thereby collaterally

attack the validity of the judgment. He also notes that his $75,000 cash bond posted by him went to benefit Plaintiff, but that only goes to the question of how to compute the balance now due on the judgment.

All elements of collateral estoppel have thereby been met.

## D. *Judicial Estoppel does not apply*

Bruetman argues that some pleadings and statements by Plaintiff's attorney had the effect of judicial estoppel to bar Plaintiff's right to argue collateral estoppel under the New York judgment.

He contends that Herbstein has taken different legal and contradictory positions in this case. The argument is that Herbstein did not assert collateral estoppel herein under the New York default judgment until after Bruetman had answered and filed counterclaims to the original Complaint and started discovery.

██ The doctrine of judicial estoppel provides that a party who prevails on one ground in a lawsuit cannot repudiate the ground in order to have a second victory based on contradictory ground. *Ogden Martin Systems of Indianapolis, Inc. v. Whiting Corp.,* 179 F.3d 523 (7th Cir.1999). There is no precise formula guiding application of that doctrine, but there are certain boundaries to it: (1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position. *Levinson v. United States,* 969 F.2d 260, 264–65 (7th Cir.1992).

██ The purpose of the doctrine of judicial estoppel is "to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories." *Levinson,* 969 F.2d at 264–65. The language of the quote from *Levinson* is telling, and indicates why Bruetman's judicial estoppel argument has

no merit: no contradictory theories or allegations of Herbstein were adopted earlier in this case nor did any other court do so. Herbstein has not been shown to have argued a different theory or allegation earlier in this or another proceeding in which he has prevailed. Indeed, Bruetman does not allege that Herbstein has prevailed in some contradictory way. He simply argues that the earlier and present positions are contradictory. However, inconsistent theories argued in the alternative without success does not call judicial estoppel into issue. *Continental Illinois Corp. v. Commissioner of Internal Revenue*, 998 F.2d 513, 518 (7th Cir.1993).

Moreover, Herbstein has not changed his assertions of what misconduct by Bruetman blocks dischargeability of his debt. Rather Plaintiff has now argued collateral estoppel by way of asserting that the earlier pleaded facts have already been established by the New York judgment.

## BRUETMAN'S CROSS MOTION FOR SUMMARY JUDGMENT ON COUNTS I AND II

Bruetman filed a cross motion for summary judgment on Counts I and II of the Adversary Complaint based on doctrines of res judicata and collateral estoppel. He contends that issues asserted in those counts were fully litigated in Argentina and were determined there adversely to Herbstein.

■ Bruetman's res judicata argument has no merit because the Supreme Court has held that res judicata does not apply in bankruptcy discharge exception proceedings. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979); *Meyer v. Rigdon*, 36 F.3d 1375 (7th Cir.1994). Moreover, as discussed below his collateral estoppel argument has no merit, because he has not shown a final judgment by an Argentine Court favorable to his position, and for other reasons discussed below.

Bruetman did file affidavits by apparently knowledgeable professionals as to the nature and process of Argentine law and other related matters.

Professor Carno of Buenos Aires University, and visiting professor at Syracuse University Law School, originally submitted an affidavit to the New York District Court in connection to Bruetman's effort in this court to dismiss on comity grounds. Bruetman has resubmitted that affidavit here, in which Carno described the earlier criminal inquiry proceeding then pending under Argentine law and procedure. However, that affidavit tends to show as of the date of its execution (March 4, 1990) the lack of finality in Argentine proceedings at that date.

Argentine attorney Gorostiza gave an affidavit also filed here by Bruetman. Attorney Gorostiza described the judicial system of Argentine as applied to the proceedings there involving these parties at the time.

Another and more recent submission from Argentine attorney Gorostiza described the Argentine legal system and procedure applicable to the civil proceedings between these parties.

An affidavit by Argentine attorney Anzoategui prepared in 1990 described the role of a "private prosecutor" who seeks to force a prosecution under Argentine law, evidently offered to explain the Argentine criminal proceeding.

A declaration by Professor Pardo (law professor at National University in Buenos Aires) opined in his 1999 affidavit as to standards of finality and *res judicata* under Argentine law in support of Bruetman's contention that the ruling in the civil Argentine litigation cited by him should have such effect.

Bruetman's affidavit authenticated the foregoing affidavits and also copies of rulings in the Argentine civil proceeding.

The opinion of the New York District Court judge denying Bruetman's summary judgment motion in that Court was also submitted. That ruling found no collateral estoppel effect resulting from dismissal of

the Argentine criminal investigation. It reported that both Herbstein and Bruetman had asked to be classified as "victim" under applicable law in that proceeding, but both those petitions were denied and only the corporation IXC was found to be a potential victim. Therefore, neither of the present parties was recognized in the Argentine court as a party to the criminal proceeding and moreover there was no final determination. Bruetman's current · motion for summary judgment is an attempt to reargue denial of summary judgment in the New York case, at least to the extent it rested on the earlier Argentine criminal proceeding. Apart from that issue, in denying summary judgment the New York District Judge found a triable issue of fact, and then set about getting the case ready for trial. Bruetman's willful non-compliance with repeated orders for discovery into his financial condition relevant to plaintiff's prayer for punitive damages followed, with the result earlier discussed.

Bruetman asks that the asserted Argentine "decisions" in the civil and criminal proceedings there be recognized here based on the doctrine of comity. As earlier discussed, no final judgment was entered in either case, but even if final Argentine judgment had been entered in the civil case, it would not warrant comity under circumstances presented here.

First, it must be recognized that neither the United States Constitution nor any statute of the United States requires federal courts to give full faith and credit to the judgments of foreign nations. *Aetna Life Ins. Co. v. Tremblay*, 223 U.S. 185, 32 S.Ct. 309, 56 L.Ed. 398 (1912). However, under the principles of international comity, United States federal courts generally will under some circumstances give effect to judicial acts of courts in foreign nations. *See Remington Rand Corporation-Delaware v. Business Systems, Inc.*, 830 F.2d 1260 (3d Cir.1987), and *Philips Medical Systems Int'l B.V. v. Bruetman*, 8 F.3d 600 (7th Cir.1993).

The Supreme Court opinion in *Hilton v. Guyot* provides the guiding principles. Comity is defined as "the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 163–64, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895). Comity "is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other." *Id.*

The criteria for application of the principles of international comity were established in *Hilton* over a century ago and are as follows:

the participants were given an opportunity for a full and fair trial;

the trial was conducted before a court of competent jurisdiction;

the proceedings followed due citation or voluntary appearance;

the trial was conducted upon regular proceedings;

the trial was under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of this country and those of other countries; and

there was no evidence of (1) fraud in procuring the judgment; (2) prejudice in the country's system of laws; (3) prejudice in the court; or (4) any other reason why comity should not be observed.

*Id.* at 123, 16 S.Ct. at 143

This is not the first time that Bruetman has advanced the comity argument. While the District Court case was pending and the Argentine Commercial case was pending, Bruetman moved there for dismissal of the District Court proceeding before a decision had been entered in either Argentine case, based on doctrines of comity and *forum non conveniens*. That motion was denied in an opinion by Judge Sweet, the

District Court Judge in New York, because he concluded *inter alia* that claims in the Argentine case and the New York case were not identical. The Court reasoned that the Argentine Complaint focused on misappropriation of corporate funds while the District Court Complaint did not deal specifically with the alleged misappropriation but alleged that Bruetman fraudulently induced Herbstein to invest in the Argentine ventures. Judge Sweet determined the following:

> [T]he Argentine proceeding is equivalent to a shareholder derivative suit, while the American proceeding is a claim for misrepresentation—two independent causes of actions. In the Argentine suit the corporation stands to gain and Herbstein perhaps only derivatively. In the present suit, it is Herbstein individually who seeks restitution for an alleged wrongdoing.

He denied dismissal.

Bruetman now argues the doctrine of comity before this court relying on *Ingersoll Milling Machine Co. v. Granger,* 833 F.2d 680 (7th Cir.1987), a case concerning recognition of a foreign judgment based on comity. In *Ingersoll* there were parallel proceedings, one in Belgium and one in a U.S. District Court. Once a judgment was reached in Belgium, before any judgment was entered in the United States, Granger moved for dismissal of the District Court suit based on the doctrine of *res judicata* based on the Belgium judgment. The District Court in *Ingersoll* stayed any further proceedings in the U.S. until the Belgium appellate court issued a final opinion, and ultimately decided that the Belgium judgment was entitled to recognition and enforcement.

This case must be distinguished from *Ingersoll* because there had been no prior U.S. judgment entered in that case. Here, there were contemporaneous proceedings pending in Argentina and the United States. However, unlike *Ingersoll,* when Bruetman moved to stay or dismiss the case in the U.S. based on comity, that

motion was denied. The New York District Court case proceeded with judgment ultimately entered against Bruetman after extensive litigation. Even if the Argentine civil proceeding had later gone to judgment, a final and valid prior U.S. judgment distinguishes this case from *Ingersoll.*

■ Entry of a valid and final U.S. judgment in the New York Case is relevant because in the Restatement (Third) of Foreign Relations Law of the United States (1986) ("Restatement") existence of a valid judgment by a United States court is an important ground for nonrecognition of foreign judgments. *See Wilson v. Marchington,* 127 F.3d 805, 810 (9th Cir. 1997) (Restatement identified as providing sound guidance for assessing legal judgments of other nations). Restatement § 482(2)(e) provides that "A court in the United States need not recognize a judgment of the court of a foreign state if the judgment conflicts with another final judgment that is entitled to recognition".

■ So even if a later Argentine judgment had decided the exact issues decided by the District Court judgment, under cited authority, any such Argentine judgment need not be recognized because it would be in conflict with the prior final judgment entered in the New York District Court.

Of course, as earlier noted, it must be emphasized that no judgment was shown to have been entered by any Argentine court for or against these parties disposing of individual claims between them.

Bruetman's argument in support of his cross motion is based partly on the fact that the Argentine cases were filed before the District Court action was initiated and that the criminal case decision which merely dismissed that proceeding was rendered almost two years before the District Court rendered the default judgment. However, the Argentine criminal proceeding that ended prior to entry of the judgment in New York did not determine a single issue, except to determine that evidence presented was insufficient to charge anyone with

criminal fraud under Argentine law. That decision did not find Bruetman or any other person guilty or innocent of the charges regarding falsified accounting statements or other dealings with Herbstein, and the case was only "temporarily dismissed." The wording of that decision as presented here in Bruetman's motion is pertinent:

> It may be appreciated that the contradictions of both appearers, which could not be clarified even though with the accounting reports [ ], mean an irretrievable obstacle to continue with the investigation, as it is not possible to detect now the existence of an objectable fact which could be typified as crime resulting in the public action, and as a consequence thereof, I believe that there should be a partial pronouncement, as stated by the Prosecutor, waiting for new evidences which could permit to go on with the investigation [ ], therefore, I resolve that this case No. 56171 is **temporarily dismissed,** in which nobody has been prosecuted due to the investigated crime [ ]. (Emphasis added)

Therefore, no final judgment was entered in that case favoring either party. Such dismissal by the Argentine court of inquiry was akin to a United States prosecutor deciding not to prosecute until and unless new evidence came to light, a decision hardly having weight like a judgment of acquittal as Bruetman would have it viewed. Even if the temporary dismissal later became final under Argentine law due to passage of time, such finality would simply end the criminal inquiry, not make final any non-existent fact findings.

The second Argentine proceeding relied on by Bruetman started in August of 1989 when Herbstein filed a Complaint in the Commercial Division of the Argentine court system. That suit requested removal of Directors Bruetman, President of IXC and another director, and also sought a determination that the removed Directors wrongfully carried out their duties as Directors of IXC. To support that request, Herbstein alleged certain facts asserted to constitute wrongful discharge of duties that were damaging to the corporation (the creation of fictitious liabilities, non-existence of the balance sheet, diversion of funds, etc.). The lower Argentine court ruling entered subsequent to the New York judgment took into consideration only one of them, the inclusion of non-existent debts in the draft of the Financial Statements for the year ending August 31, 1988. However, it dismissed the financial responsibility claim in which Herbstein had sought personal compensation for damages allegedly suffered from various actions of defendant asserted to constitute corporate mismanagement.

On August 5, 1993 (a year after entry of the New York judgment), the Argentine lower court issued the foregoing ruling in the civil case. Although Plaintiff had labeled his claim as an "individual action for responsibility", the Court reclassified the action initiated by Herbstein, ruling that the suit was really a shareholder derivative action not an individual action for individual relief. The individual claim was dismissed leaving only the shareholder derivative suit.

The Argentine lower court decided to remove Bruetman and another defendant from their positions as Directors and recommended appointment of a new Board of Directors which was to be entrusted with producing new corporate financial statements. It also ruled that Herbstein had not established his allegations that Bruetman diverted funds from the corporation for payment of expenses on behalf of other corporations that were under his control.

Bruetman and the other defendants appealed the decision of the Argentine lower court. Their appeal was based on the lower court judge's reclassification of the action initiated by Herbstein. The Appellate court reversed the lower court, reasoning *inter alia* that removal of the directors was not warranted and that the Argentine lower court judge could not modify the Complaint by reclassifying the

action as a derivative suit. The appellate court ruled that the modification of Herbstein's claim would result in the defendants being deprived of their "defense rights" since the lower court's ruling took place after the defendants had answered the Complaint.

The only determination by the Argentine civil court that conceivably relates to the issue of dischargeability here was the Argentine lower court's determination that Herbstein had not pleaded a diversion of corporate funds by Bruetman. But that finding (which was not shown here to have been a final judgment), must be viewed as contradicting allegations found to have been established earlier by entry of judgment in the District Court Complaint—Count I.

For the foregoing reasons, to the extent that any determination by the Argentine court could be found to conflict with the earlier District Court judgment, such determination need not and should not be recognized here. Indeed, parties who litigate to a conclusion in a United States court can hardly expect any United States court to give effect to a subsequent contrary ruling by a foreign court, and that should not be done here.

## CONCLUSION

For reasons stated, Bruetman's cross motion for summary judgment will be denied, and Plaintiff's Motion for Summary Judgment on Counts I and II of Herbstein's Adversary Complaint will be allowed. There are no issues of fact preventing entry of summary judgment for Plaintiff, and he is entitled to judgment in Counts I and II as a matter of law. Judgment will enter by separate orders in favor of Plaintiff on these counts and status will be set on remaining counts sued on here.